**James C. SAPP and Annie R. Sapp**

v.

**The UNITED STATES of America.**

**Civ. A. No. 5398.**

United States District Court
W. D. Louisiana,
Lake Charles Division.

July 22, 1957.

James A. Smith, Lake Charles, La., for plaintiffs.

T. Fitzhugh Wilson, U. S. Atty., Meredith T. Holt, Asst. U. S. Atty., Shreveport, La., for defendant.

HUNTER, District Judge.

Brought under the Federal Tort Claims Act,[1] this suit is for personal injuries sustained by Sgt. and Mrs. James C. Sapp when a United States Air Force B–47 Bomber crashed and burst into flames within a few feet of their home.

The facts, insofar as shown, are these:

(1) On the evening of February 28, 1955, at approximately 6:30 P.M., a B–47 aircraft, No. 2045, took off on a routine training mission from the Lake Charles Air Force Base.

1. 28 U.S.C.A. §§ 1346(b), 2671–2680.

(2) At all times pertinent the aircraft was in the sole and exclusive custody and control of employees of the United States, acting in the scope of their employment and for the benefit of the United States.

(3) Soon after the take-off, the aircraft developed engine trouble with its No. 2 engine, and as a precaution the pilot shut down that engine and remained in the Lake Charles-Lafayette area until sufficient fuel had been burned to permit the plane to land safely at its home field.

(4) At about 11:30 P.M. the aircraft came in for a landing, the craft made a regular, announced approach into the Lake Charles Air Base flying area. The plane was under the command of Captain Clarence Wilson. He was accompanied by Captain Mark Veck, listed as pilot, and Captain Elwyn McBee, Observer. All three of these officers were members of the 52nd Bombardment Squadron, 68th Bombardment Wing, Lakes Charles Air Force Base, Lake Charles, Louisiana.

(5) The aircraft was cleared for a standard jet landing; and at the proper time, control of the aircraft was transferred to GCA. GCA picked up the aircraft on search radar at 21 miles north of the Air Base and advised the pilot to report over the North Lake Charles "homer" at 3,000 feet. The final controller took control of the aircraft between five and eight miles out, at which time the aircraft was right on course. At five miles out it was still on the course line but slightly over the glide path. GCA advised the aircraft to correct its position, and at four miles out the plane was lined up properly on the glide path. At three and one-half miles out it began to drift to the left. GCA directed a correction to the right, and receiving no answer did so again. No acknowledgment was received and the plane continued approximately five degrees off course to the left. Seconds later, the aircraft was observed to take a sharp

90-degree turn to the right, and dropped off the scope. It then crashed into Hazel's Trailer Village in the vicinity of Highway 171 at Moeling Street, Lake Charles, Louisiana.

(6) Sgt. and Mrs. Sapp were sleeping in their trailer home when the bomber crashed and burst into flames mere feet away.

(7) Sgt. Sapp is now, and was at the time of the accident, a sergeant in the United States Air Force. His injuries were not service-connected or in any sense incident to his military service. What Sapp was doing at the time he was injured (sleeping at his home) had absolutely nothing to do with his military service.

(8) At the time of the crash the weather was suitable for flying—visibility 10 miles, ceiling 400 to 600 feet, and there was no fog. The turbulence mentioned by the weather officials was so slight that is should not have affected the flight of an aircraft the size and weight of a B–47. One B–47 landed before Aircraft 2045 crashed, and two landed immediately thereafter.

(9) In the past several years tremendous improvements have been effected in the design and construction of the B–47, and in the operation and maintenance thereof. Today, the B–47 is no longer an experimental plane, and has been accepted by the United States Air Force as a combat plane and is used in the training of pilots.

(10) An accident of this nature does not ordinarily happen when the aircraft has been properly inspected, maintained, serviced and flown by competent personnel, unless there is a lack of due care by someone responsible for its operation [2].

(11) The doctrine of res ipsa loquitur is applicable here. The defendant has not proven why the accident occurred, nor has it proven that it was without fault. Applying the doctrine of res ipsa loquitur the Court concludes as a fact that the government agents were guilty

---

2. See testimony of Col. Klose, Major Roy Eidson and Lt. Charles J. Clark.

of negligence which was the proximate cause of the plane going off its course and crashing. The circumstances leave no room for a different finding. Defendant has not overcome the inference of negligence.

(12) Mrs. J. C. Sapp, one of the plaintiffs in the case at bar, was thrown from her bed at the time of the impact. Her husband, Sergeant J. C. Sapp, the other plaintiff herein, carried her from their trailer wrapped in a blanket to protect her from the fire which engulfed their small home. Sgt. Sapp, when awakened by the crash, heard his wife screaming and immediately set out to take her from the burning trailer.

(13) We do not believe that Mrs. Sapp has proven by a preponderance of the evidence that she suffered a miscarriage, and for that she is to receive nothing.

(14) Mrs. Sapp received no traumatic injury. Her remaining claim arises out of and indirectly from nervous tension and anxiety which she allegedly suffered as a result of the accident. There is no evidence that she was ever examined by Lake Charles Air Force Base Hospital at the time of the accident. She did consult later with and was examined by Dr. L. L. DiGiglia and Dr. Charles F. Adkins, a Psychiatrist of Beaumont, Texas. The Court finds that Mrs. Sapp's condition, which has been diagnosed both by Dr. Adkins and Dr. DiGiglia as an anxiety psychoneurosis, was precipitated by the crash and accident of February 28, 1955, and damages therefor are fixed at $3,000.

(15) Sgt. Sapp's injuries consisted of 2nd and 3rd degree burns over approximately 10 per cent of his body. These burns were confined specifically to the neck, arms, head and shoulders. All the hair was burned from his head. Dr. Harold R. Bicknell, who treated Sgt. Sapp, and testified for defendant, stated that severe pain accompanied the burned area for approximately three weeks after the accident. Sgt. Sapp was hospitalized for nineteen days and was treated as an out-patient for an additional thirty-four days. He returned to duty fifty-three days after the accident but was still treated for a urticarian (penicillin rash) condition after that. This condition was caused by penicillin shots administered as treatment for the burns and the condition lasted for two or three weeks and resulted in frequent scaling of the Sergeant's hands and feet, as well as an irritating hives type rash. The scar tissue which formed over the burned area is supersensitive and reacts to heat and perspiration.

(16) Even though Sgt. Sapp is capable of serving in the Armed Forces, he is entitled to recover for pain and suffering, past, present and future, in the amount of $10,000.

## Sgt. Sapp's Right of Action

The Government insists that Sgt. Sapp has no right of action because it says that his injuries arose out of or in the course of activity incident to service. Cited to support this proprosition were: Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152; United States v. United Services Automobile Ass'n, 8 Cir., 238 F.2d 364; Preferred Ins. Co. v. United States, 9 Cir., 222 F.2d 942; Orken v. United States, 6 Cir., 239 F.2d 850.

The conclusion is inescapable that Sapp's injuries were not service-connected, nor in any sense incident to his military service; the cited cases are not applicable; and the facts here insofar as Sapp's right of action is concerned are identical with the facts in Snyder v. United States [3].

## Res Ipsa Loquitur

Many Louisiana courts have interpreted this phrase. The Fifth Circuit has on numerous occasions extensively discussed Louisiana law pertinent there-

3. D.C., 118 F.Supp. 585, modified United States v. Guyer, 4 Cir., 218 F.2d 266, affirmed 350 U.S. 906, 76 S.Ct. 191, 100 L.Ed. 796.

to [4]. Fundamentally stated, the doctrine of res ipsa loquitur is that in the absence of an explanation by a defendant, when a thing causing injury is shown to be under the management of defendant, and the accident is such as in the ordinary course of things does not happen, if those who have its management use proper care, a sufficient basis is afforded for a finding and a conclusion that the accident arose from want of care and was proximately caused thereby. The Louisiana law looks with favor and extreme liberality upon the application of the doctrine. In Whalen, supra [220 F.2d 82], Judge Tuttle, speaking for the Fifth Circuit, made this very pertinent observation:

> "We believe that those cases are a better expression of Louisiana law than the dicta in the Dorman case, supra, and that they are in line with recent decisions of the United States Supreme Court giving the same or broader scope and latitude to the res ipsa loquitur rule. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Jesionowski v. Boston & M. R. R., 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416, 169 A.L.R. 947."

The doctrine has the capacity for great flexibility. Each case seeking to invoke the doctrine must stand or fall upon its own facts. But, its application necessarily varies with experience, and a situation to which the doctrine was not applicable several years ago because of insufficient experience or lack of technical knowledge might today fall within the scope of the rule, depending upon what experience has shown. In the past several years, tremendous improvements have been effected in the construction of the B–47. Today and at the time of this accident, it is and was a relatively safe means of transportation. A B–47 of the type herein used coming in to land on an ordinary routine flight under normal weather conditions does not crash in the ordinary course of things unless there has been a failure to properly inspect, service, and maintain it, or unless it is not operated with due care.

While there are no reported decisions of the courts of Louisiana ruling specifically on the applicability of this rule to accidents involving aircraft [5], there are numerous authorities from other jurisdictions, and the modern trend of authority is to hold the doctrine of res ipsa loquitur applicable to airplane accidents [6], and certainly this is true when, as here, it is apparent from the evidence that the plane was off its prescribed course.

The Government argues, in effect, that the novelty of air navigation should preclude the application of the doctrine of res ipsa loquitur to airplane accidents, in view of the fact that they may be due to mysterious and unknown causes. They rely heavily of Morrison v. Le Tourneau, 5 Cir., 138 F.2d 339; Chapman v. United States, 5 Cir., 194 F.2d 974; and Williams v. United States, 5 Cir., 218 F.2d 473.

Turning first to Morrison, the facts there are altogether different and the principles announced therein cannot be applied to the case at bar because:

> (a) There, the decedent was a passenger in a little dual control Cub, and the court concluded that there was no proof whether the pilot

---

4. Chicago, R. I. & P. R. Co. v. McClanahan, 173 F.2d 833; Whalen v. Phoenix Indemnity Co., 220 F.2d 78, and on rehearing 222 F.2d 121; Bish v. Employers' Liability Assur. Corp., 236 F.2d 62.

5. Only one Louisiana case has been called to my attention where the doctrine was discussed in connection with an airplane accident (LeJeune v. Collard, La.App., 44 So.2d 504, 507, 17 A.L.R.2d 550). Plaintiff's deceased husband, LeJeune, was killed in a crash. LeJeune was the pilot and not Collard. The Court held the doctrine of res ipsa loquitur was not applicable because:

"We think that in our case * * * the pilot who was flying the airplane at low altitudes making turns, flying over houses, was in a better position to explain this accident than was the defendant Collard who was at his place of business in Lake Charles."

6. United States v. Kesinger, 10 Cir., 190 F.2d 529, and authorities cited therein.

was piloting the plane at the time of the crash or whether Morrison was piloting it.

(b) There, two defendants were involved, and it was impossible to determine the defendant against whom the rule should be applied, since the two defendants were charged with separate and distinct acts of negligence.

Chapman did not involve the doctrine of res ipsa loquitur and is not helpful to the decision in the case under consideration. This leaves for our consideration the case so heavily relied upon by the Government—the Williams case. There, a B-47 Stratojet Bomber, similar to the one involved here, caught fire and exploded in midair, over Mariana, Florida. There, as here, plaintiff relied solely upon the application of the doctrine of res ipsa loquitur. The Fifth Circuit denied recovery there because plaintiff failed to prove that the accident would not have occurred in the ordinary course of events if the defendant had exercised due care, and because the court had "no knowledge, judicial or otherwise, of what would cause a jet airplane to explode in midair while in flight." [218 F.2d 476.] That decision can be authoritative here only if we ignore vital distinctions that are immediately apparent, as follows:

(a) There, the crash occurred in 1952. At that time the B-47 was an experimental plane, whereas the accident in this case occurred in 1955 at which time the B-47 was an accepted combat plane.

(b) Here, unlike Williams, there is positive testimony to the effect that the accident would not have occurred in the ordinary course of events if the defendant had exercised due care.

(c) There, the plane exploded in midair. Here, for some inexplicable reason, the aircraft, while coming in to land, departed from its prescribed course, hit the ground at the location of a trailer park, and exploded. The evidence shows that the aircraft was in the wrong place at the wrong time, and this has not been explained.

Conclusions of Law

(1) The Court has jurisdiction under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b) and 28 U.S.C.A. § 2671 et seq.

(2) The venue of the cause lies in the Western District of Louisiana, Lake Charles Division, under the provisions of 28 U.S.C.A. § 1402(b).

(3) The law to be applied in this case is the law of Louisiana. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

(4) The doctrine of res ipsa loquitur applies.

(5) The fact that the plane was under the exclusive control of the defendant and that the accident is such as in the ordinary course of things does not happen if those who have its management use proper care gives rise to an inference of negligence which the defendant has failed to explain or rebut.

(6) Where an Air Force sergeant, while off duty and at his home, sustained injuries by reason of an airplance crash, such injuries were neither service-connected nor in any sense incidental to his military service, and he was not precluded from maintaining action under the Federal Tort Claims Act (Snyder v. United States, supra).

(7) On the record, Sgt. Sapp is entitled to recover as a result of his injuries due to the accident a total amount of $10,000.

(8) On the record, Mrs. Sapp is entitled to recover as damages sustained by her as a result of the accident a total amount of $3,000.

(9) The attorneys for plaintiffs are entitled under Section 2678, Title 28, U.S.C.A., to an attorneys' fee of 20% of the amount of this recovery for services rendered, to be paid out of the judgment this day rendered against the Government.

Proper decree should be presented in accordance with these findings.