RICHARD L. STOCKING AND VELMA V. STOCKING,
PLAINTIFFS AND APPELLANTS v. JOHNSON FLYING SERV-
ICE, A CORPORATION, DEFENDANT AND RESPONDENT.
No. 10471.
Submitted October 7, 1963. Decided November 29, 1963.
387 P.2d 312.

Goldman & Jordan, Lee A. Jordan (argued), Missoula, for appellant.

Garlington, Lohn & Robinson, Robert H. Robinson and Harold Holt (argued), Missoula, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

Plaintiffs, Richard L. Stocking and his wife, Velma V. Stock-

ing, hereinafter referred to as appellants, appeal from a nonsuit granted defendant, Johnson Flying Service, hereinafter referred to as respondent, by the court of the fourth judicial district. The original suit was for damages. The nonsuit was entered on motion of respondent after appellants rested their case in chief.

Appellants are owners of property consisting of a home and appropriate buildings situated on approximately 1.12 acres of land. This land is located roughly seven miles south of Missoula just off the Bitterroot Road—U. S. Highway No. 93.

During lunch time on July 8, 1960, appellant was notified by one of his sons that smoke was rising from an area to the north of his home. Investigating, appellant found this smoke to originate in a wooded hilly area, used as a dump, some one-fourth to one-half mile from appellants' property. Appellant and his sons attempted to extinguish this fire but were unable to do so. The fire spread to nearby trees becoming a forest fire out of control. The fire commenced moving down a gulch toward appellants' property. Appropriate authorities were notified of this fire's existence.

Forest fire fighters commenced to arrive on the scene almost immediately. Airplanes arrived over the scene of the forest fire and dropped aerial fire retardant about 2:30-3:00 p. m. In all, eight retardant drops are alleged to have been made in the vicinity of the fire. One of these aerial drops spread over appellants' property. Appellants commenced this action for damages sustained to their property as a result of this retardant settling thereon.

Appellants rested their case in chief. Respondent moved for a nonsuit. The district court, relied on section 93-4705, subd. (5), R.C.M.1947, which states: "An action may be dismissed or a judgment of nonsuit entered * * *.

"5. By the court, upon motion of the defendant, when, upon trial, the plaintiff fails to prove a sufficient case for the jury," granted a judgment of nonsuit. In its statement dis-

charging the jury and granting the nonsuit, the district court found that an injury had occurred to appellants' property but stated: "I can't recall one scintilla of evidence regarding what is proper care when an aircraft is used in fire fighting," and "In other words, we don't know what is ordinary in this situation, and we don't know what is proper care." If these statements are true, then the district court was justified in discharging the jury and granting the nonsuit since an "inference of negligence cannot be drawn from the bare fact that an injury occurs." Mellon v. Kelly, 99 Mont. 10, 20, 41 P.2d 49, 52.

Appellants' sole question involved here is "Whether or not the pleadings and plaintiffs' evidence established a sufficient case to withstand the defendant's motion for nonsuit?"

██ The general rule, that on a motion for a nonsuit the evidence of the plaintiff is regarded as proving every material fact which it tends to prove, was stated by this court in Escallier v. Great Northern Ry Co., 46 Mont. 238, 251, 127 P. 458, 462. In that same case, we further qualified this rule by holding that "there must be substantial evidence—more than a mere scintilla—in order to justify a verdict," and that this "rule obtains where the evidence is in such a condition that, if the case should be submitted to the jury and a verdict for the plaintiff returned, it would be the duty of the court to set it aside." In Flynn v. Poindexter & Orr L. Co., 63 Mont. 337, 360, 207 P. 341, 348, we held that "Competent evidence must be produced of all facts necessary to a recovery, upon which the jury can base a reasonable reliable conclusion; nothing can be left to mere conjecture," and in Incret v. Chicago, M., St. P. & P. R. Co., 107 Mont. 394, 418, 86 P.2d 12, 19, substantial evidence was defined as evidence which "will convince reasonable men and on which such men may not reasonably differ as to whether it establishes the plaintiff's case, and, if all reasonable men must conclude that the evidence does not establish such case, then it is not substantial evidence." Whether or not substantial

evidence has been presented by the plaintiff is a question of law for the court, not fact for the jury. Flynn v. Poindexter & Orr L. Co., supra, 63 Mont. p. 360, 207 P. p. 348.

■ " 'The party holding the affirmative of the issue must produce the evidence to prove it; therefore, the burden of proof lies on the party who would be defeated if no evidence were given on either side.' R.C.M.1947, § 93-1501-1. The burden throughout is on him who has the affirmative of an issue. DeSandro v. Missoula Light & Water Co., 48 Mont. 226, 136 P. 711. Under this section the party asserting a right in any case has the burden of proving each of the material allegations of his cause of action. Tucker v. Missoula Light & R. Co., 77 Mont. 91, 250 P. 11." McDonald v. Peters, 128 Mont. 241, 243, 272 P.2d 730, 731. See Burns v. Fisher, 132 Mont. 26, 30, 313 P.2d 1044, 67 A.L.R.2d 1.

■ This suit is predicated on damages incurred by appellants on their property from the alleged negligent actions of respondent, its agents, servants or employees. One of the material allegation in this type of suit is the negligence or negligent acts of the respondent, his agents, servants or employees. In the pleadings, the appellants allege the respondent was negligent, this the respondent denies. The burden of establishing this material allegation rests with the appellants.

■ The word "negligent" is defined by section 19-103, subd. (16), R.C.M.1947, as importing "a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns" or, stating it another way, "[n]egligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person under the existing circumstances would not have done." Birsch v. Citizens' Electric Co., 36 Mont. 574, 579, 93 P. 940, 942; Maki v. Murray Hospital, 91 Mont. 251, 273, 7 P.2d 228.

During appellants' case in chief, seven witnesses were called

and testified, none being experts in forest fire fighting or the control of airplanes in flight, more specifically, the control of aircraft while dropping fire retardant on forest fires. In essence the testimony of the witnesses called was: Mr. Stocking —damages incurred to his property from fire retardant dropped from an airplane while attempting to control a forest fire near his property which, at or near the time of this drop, was out of control; Mr. Swinger—attempt to cast disparagement on the character of respondent's president and owner, which failed; Mr. Richlie—damages incurred to appellants' property; Mrs. Swinger—a forest fire did exist in the immediate vicinity of appellants' property; Mr. Rollins—soil sterilization expert to show damage to appellants' property; Mrs. Sain— damages to appellants' property; and Mrs. Stocking—damages incurred to appellants' property from an aircraft dropping fire retardant while the aircraft was attempting to control a forest fire burning nearby.

None of appellants' witnesses offered testimony concerning the ordinary actions or procedures of an aircraft pilot under the conditions existing at the time the fire retardant was deposited on appellants' property. Missoula is the headquarters for Region One of the U. S. Forest Service. Aerial fire retardant has been used quite extensively throughout the Western States in the immediate past to assist in controlling forest fires. It appears to us that expert witnesses in both forest fire fighting and in the dropping of aerial fire retardant could easily have been called or subpoenaed to establish the ordinary conduct of a prudent airplane pilot under the then existing circumstances. It appears to us that appellants have not satisfied the criteria of proof of negligence. But, appellants attempt to circumvent the burden of proving negligence by alleging the doctrine of *res ipsa loquitur*.

In the commission of certain injuries it is impossible for a party to prove facts showing negligence, but by common knowledge and experience it is clear that the injury would not

have occurred but for the responsible party's negligence. When this situation arises, courts generally apply the doctrine of *res ipsa loquitur,* or "the thing speaks for itself." Maki v. Murray Hospital, 91 Mont. 251, 263, 7 P.2d 228.

*Res ipsa loquitur* is defined as: "That when an instrumentality which causes injury, without any fault of the injured person, is under the exclusive control of the defendant at the time of the injury, *and the injury is such as in the ordinary course of things does not occur* if the one having such control uses proper care, then the law infers negligence on the part of the one in control as the cause of the injury." [Emphasis supplied.] Whitney v. Northwest Greyhound, 125 Mont. 528, 533, 242 P.2d 257; Davis v. Trobough, 139 Mont. 322, 326, 363 P.2d 727.

"This doctrine is not an exception to the rule that the burden is on the plaintiff to prove actionable negligence, nor does it permit a recovery on mere proof of the injury; it merely 'has the force of a disputable presumption of law and supplies the place of proof necessarily wanting' when the injured party cannot disclose the cause of his injury, but it is apparent prima facie that the accident would not ordinarily have happened had the defendant exercised ordinary care. [Cases cited.]

"Further, this doctrine is not, as sometimes said, proof of negligence by a species of circumstantial evidence, the inference to be drawn by the jury from the probability of negligence resting, not upon evidence, direct or circumstantial, but upon a postulate from common experience that accidents of the kind involved do not ordinarily occur in the absence of negligence. [Reference material cited.]" Maki v. Murray Hospital, supra.

In Sapp et al. v. United States, D.C., 153 F.Supp. 496, an action involving the crash of an Air Force B-47 aircraft, in applying the laws of Louisiana, the U. S. District Court held that the doctrine of res ipsa loquitur applied. This ruling was

based on the reasoning that the B-47 was not an experimental aircraft, that it was operational ready—a combat aircraft, one used in the training of pilots and that accidents of the nature involved did not occur "unless there is a lack of due care by someone responsible for its operation."

The Sapp case is not in point here but the reasoning contained therein is applicable. Aerial fire retardant being dropped on forest fires is not new, it has been used for a considerable length of time to assist in the combat of forest fires. Was sufficient evidence presented for a showing that the injury complained of would not have occurred in the ordinary course of dropping aerial fire retardant on a forest fire under the circumstances existing?

In discussing the doctrine of *res ipsa loquitur* in aircraft cases, the United States Court of Appeals, Fifth Circuit, stated in Williams v. United States (Air Force) 218 F.2d 473, 476: "In the final analysis, each case seeking to invoke this doctrine must stand or fall upon its own facts. *Res ipsa loquitur* is a rule based upon human experience and its application to a particular situation must necessarily vary with human experience. * * * *It is not enough that the plaintiff show that the thing which injured him was in the exclusive control of the defendant, he must also show that the accident would not have occurred in the ordinary course of events if the defendant had exercised due care."*

If there had not existed circumstances which required the dropping of fire retardant, then definitely the doctrine of *res ipsa loquitur* would apply. Here there was an impending disaster—a forest fire out of control.

 Respondent was fighting a forest fire in the immediate vicinity of appellants' property in the capacity of what appellants' witnesses described as a "private contractor" under hot dry conditions on a United States forest. Respondent's actions in such circumstances are in true character of public convenience, necessity and safety. No claim for relief should

70

exist against such a party so long as it reasonably appears that the action is to prevent or mitigate the effects of an impending disaster such as a forest fire. See State ex rel. Kern v. Arnold, 100 Mont. 346, 360, 49 P.2d 976, 100 A.L.R. 1071; 86 C.J.S. Torts, § 11; Surocco v. Geary, 3 Cal. 69, 73, 58 Am. Dec. 385; Restatement of Torts, § 196. The phrase *Salus populi est suprema lex,* interpreted as meaning, there exists an implied agreement of every member of society that his own individual welfare shall, in cases of necessity, yield to that of the community, and that his property, liberty, and life shall, under certain circumstances, be placed in jeopardy, or even sacrificed for the public good, might well be applicable in the instant action. (Broom's Legal Maxims, 9th Ed.)

The public policy of this state concerning suppression of forest fires is observed in sections 82-1237, 28-109, 28-601-28-603, and 81-1412-81-1414, R.C.M.1947. The latter section gives a fire warden authority to call upon any able-bodied citizen between eighteen and fifty for assistance in combatting forest fires for at least five days per year.

To impose individual responsibility on a fire fighter actively engaged in the suppression of a fire, whether he be afoot, mule-back or in an airplane, would be to strike at the heart of public policy and be against it.

Whether or not the injury complained of is such as in the ordinary course of the existing events would occur is generally a jury decision based on adequate testimony and governed by appropriate instructions.

The doctrine of *res ipsa loquitur* might be applicable in this instance if some conduct had been shown to have existed that was not ordinary. Appellants were in the immediate vicinity of the drop if not directly under, when the retardant settled on their property. The retardant originated from an aircraft. The record does not indicate that there were any erratic movements of the aircraft to establish prima facie negligence in the maintenance or servicing of the aircraft, or

in the conduct of its pilot to satisfy the bare requirement necessary to invoke the doctrine of *res ipsa loquitur*. On the contrary, appellant on direct examination was asked: "Did this aircraft that dropped the load on your house seem to be in trouble, or appear to be in trouble?" to which he answered: "I don't believe so. The motor—well, I know it was pretty noisy. It didn't seem like it was missing or anything." Contra testimony was not presented. Appellant did testify that the fire had burned within 256 feet from the corner of his house and that spot fires had been stamped out on adjoining property. In fact, one spot fire included the slab housing of a well of appellants' neighbors. No witness testified as to the weather conditions, intensity of smoke, conditon of the fire, features of the terrain, etc., facts that would have a bearing on the conduct of a pilot making a retardant pass. There is thus no case of *res ipsa loquitur* presented because the primary assumption is lacking; it was not shown that the injury complained of would not have occurred in the ordinary course of fighting a forest fire with aerial fire retardant under the existing circumstances.

Appellants orally argue that the district court was in error in presuming that respondent's aircraft was, at the time of this particular forest fire, under the control of the United States Forest Service.

Appellants' witness testified that respondent's president was also its owner and that he was a "private contractor," presumably in connection with respondent. The term "private contractor" has never been defined in Montana nor has it been found to have been defined elsewhere.

The words "private" and "contractor" have been defined by Webster's Third New International Dictionary, 1961, to mean respectively "not of a public nature, unconnected with others" and "one who formally undertakes to do anything for another."

The term "private contractor" is a term used daily in present

business terminology and could easily be a synonym for the term "independent contractor" which has been defined by section 92-438, R.C.M.1947, as "one who renders service in the course of an occupation, representing the will of his employer only as the result of his work, and not as to the means by which it is accomplished." We feel however that appellants' witness used the term "private contractor" in a sense different than as an "independent contractor."

"Private contractor" as used in present business terminology would indicate a person who undertakes to contract with others for the rendition of services by himself, others or organizations of which he is or is not associated and which are privately organized as such under statutory requirements, in such a guise, demeanor, manner and conduct for the sole purpose of acquiring a financial profit or gain for his exclusive benefit, enjoyment, purpose and use. A "private contractor" would correspond to the definition of an "independent contractor" in the manner in which the services are to be executed—the control of performance over the services.

In light of this definition and the testimony of appellants' witnesses, the district court was correct in presuming respondent or his agents had not flown his planes gratis to drop retardant on the existing forest fire, that he had contracted with a third party to perform this service but not as to the control exercised by either respondent or the third party, or who the third party was. The name of the third party and the control exercised by this third party requires proof and cannot be presumed from common knowledge when dealing with "private contractors" since a private contractor is generally not limited to whom he contracts and each contract entered into could differ as to the degree of control exercised by either party.

The burden of proving that respondent's aircraft was under the control of the U. S. Forest Service would have rested with respondent himself. Respondent raised this issue as

affirmative defense. As has been discussed earlier in this decision, "the burden throughout is on him who has the affirmative of an issue."

The district court itself stated that the nonsuit was not granted solely on the issue of control, but also on the issue of negligence.

██ ██ In conclusion, considering the testimony that was presented and the legal aspects relative thereto, this case falls within the doctrine of *damnum absque injuria*, interpreted to mean that there may be damages or loss without any violation of legal rights. Bakken v. State Highway Comm'n, 142 Mont. 166, 382 P.2d 550. Nonsuit affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICE JOHN C. HARRISON, concur.

MR. JUSTICE CASTLES (concurring specially):

I concur in the results herein, but not in all that is said. I would bottom the affirmance of the District Court's judgment of nonsuit on the pleadings and evidence presented on the grounds that a fire fighter actively engaged in the suppression of the fire has an immunity against suit for simple negligence. So far as the opinion speaks on this point, I concur.

MR. JUSTICE ADAIR:

I dissent.

In my opinion, the testimony and evidence introduced in support of the plaintiff's complaint herein were amply sufficient to make a prima facie case of negligence which should have been submitted to the jury for its determination, and I think that the trial court erred in sustaining the defendant's motion for nonsuit. I consider this to be a case wherein the facts should have been determined by the jury and not by the trial court.