Robert E. GURSLEY et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 7893.

United States District Court
D. Colorado.

Aug. 11, 1964.

Paul Allen Barber, Colorado Springs, Colo., Mayne Miller, Casper, Wyo., for plaintiffs.

Lawrence M. Henry, U. S. Atty., and Edward Mulhall, Jr., Asst. U. S. Atty., Denver, Colo., for defendant.

DOYLE, District Judge.

This is an action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. Sgt. Martienus VanLith, one of the plaintiffs in this action, was one of a group of persons injured when the military quarters which he occupied with his family at Fort Carson, Colorado was demolished in an explosion.

The availability of a remedy under the Federal Tort Claims Act is in question with respect to him alone. The civilians injured by the explosion have no administrative remedy, and are free to maintain actions under the Federal Tort Claims Act. Because the injuries which Sgt. VanLith suffered were allegedly "incident to his military service" within the scope of the doctrine of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L. Ed. 152 (1950), the government argues that Sgt. VanLith, though he has an administrative remedy provided by the Military Personnel Claims Act, 10 U.S.C. § 2732, is precluded from maintaining an action under the Federal Tort Claims Act. The government has moved for summary judgment in Sgt. VanLith's case.

The decisive question is whether or not the injuries suffered by Sgt. VanLith on the occasion of the demolition of his military quarters by explosion were "incident to his military service." If they were, it follows that his action under the Federal Tort Claims Act can not be maintained.

Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), clearly established the right of servicemen to recover under the Tort Claims Act for injuries which were *not* inflicted incident to their military service—even though they had also had an administrative remedy. In that case two brothers on furlough were visiting their parents' home in North Carolina. While driving in the family automobile with their father they were injured in a collision with a government vehicle which was being

driven on a North Carolina highway. The injuries they suffered, the Supreme Court held, reversing the Court of Appeals for the Fourth Circuit, were not inflicted incident to their military service.

Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), on the other hand, established equally clearly that if a serviceman's injury was incident to his military service he is precluded from maintaining an action under the Federal Tort Claims Act. The language the Court used was:

"We conclude that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159,

holding that the action had been properly dismissed. Feres involved the death of an Army Lieutenant who was killed when the barracks in which he was quartered burned. Plaintiff, the executrix of Lt. Feres' estate, sought to recover under the Tort Claims Act on the theory that the Army had negligently quartered Feres in barracks which should have been known to have been unsafe because of a defective heating plant, and at the same time negligently failed to maintain an adequate fire watch.

Although the principles of these two cases are thought to be compatible, their application to diverse fact situations is not free of difficulty—and the numerous decisions following one or the other of these leading cases fail to alleviate the confusion. The full rationale of many of these decisions is not articulated. In considering the question of personal injuries inflicted upon servicemen in consequence of damage to the quarters which they occupied it appears that courts have consistently allowed claims to be brought under the Federal Tort Claims Act where servicemen were occupying their own homes located outside the confines of military installations. Snyder v. United States, 118 F.Supp.

585 (D.Md.1953); Sapp v. United States, 153 F.Supp. 496 (W.D.La.1957). The courts have just as consistently dismissed claims brought under the Tort Claims Act where servicemen were occupying quarters located within the confines of military installations. Feres v. United States, 177 F.2d 535 (2nd Cir. 1949), aff'd. 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); Orken v. United States, 239 F.2d 850 (6th Cir. 1956).

It may be that the rationale for denying recovery under the Federal Tort Claims Act to servicemen will ultimately extend only to that class of situations in which it is obvious that permitting a serviceman to sue would be directly subversive to military discipline. It seems, however, that the rule of Feres does extend to situations other than those involving orders given in either a combat or military training setting. The Federal Tort Claims Act, by its terms, 28 U.S.C. § 2680(j), defeats government liability in a combat setting in time of war. The "incident to service" exception defined by Feres is, as we analyze it, designed to conform the interpretation of the Act to a comprehensive statutory scheme for administratively compensating injured servicemen in war and peace and to the intent of Congress in enacting the Tort Claims Act, which was to extend a remedy to classes of persons injured in consequence of the acts of government officers and employees who previously had no remedy as against the government. Feres, then, recognized as a yet valid precedent at least in the military context, United States v. Muniz, 374 U.S. 150, 159, 83 S.Ct. 1850, 10 L. Ed.2d 805 (1963) must be construed as defeating government liability (under the Tort Claims Act) to servicemen in a class of cases which do not *directly* involve considerations of maintaining discipline. It is not alone for reasons of maintaining discipline that the government is deemed not to be liable for the negligence of an army physician operating on a serviceman, Jefferson v. United States, 178 F.2d 518 (4th Cir. 1949), aff'd sub nom. Feres v. United States,

340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); Griggs v. United States, 178 F.2d 1 (10th Cir. 1949), reversed sub nom. Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). It is, rather, because of a policy of not permitting a serviceman to call in question by means of a civil action in tort the acts of service physicians. From this class of cases it may be necessary to distinguish, on rather arbitrary grounds, it seems to us, an action under the Federal Tort Claims Act predicated upon the alleged negligence of a Veterans' Administration Hospital or military physician in treating a *veteran*, United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). The reasons for denying government liability to injured servicemen under the Federal Tort Claims Act in the cases in which such liability is denied seem to relate to distinctions between varying degrees of proximity between the particular serviceman's injury and the peculiar geographical situs and military function of the activity in which the serviceman was engaged while injured. Thus, the falling of an Air Force plane on a private home located outside the base may give rise to government liability under the Federal Tort Claims Act, regardless whether the home happens to be occupied by a serviceman or a civilian. The functional relationship between the serviceman's military service and the chance fact that a military plane falls on a suburban home occupied by a serviceman rather than his civilian neighbor can not be discerned. Though the result may perhaps not be readily defensible, federal courts have consistently ruled, on the other hand, that servicemen occupying on-base quarters built and maintained by the government have no remedy under the Federal Tort Claims Act when they are injured in consequence of destruction of their quarters because their residence there has a unique functional relationship to their military service and is incident thereto.

Any valid distinction between the two classes of cases (injury to on-base and off-base housing) must lie in the existence of this peculiar functional relationship between the serviceman's military activity and the fact that he is quartered in military housing. To be sure, the reason why a serviceman might be living with his family in a suburb near a military installation is, in a sense, the fact that he is a serviceman whose place of duty is nearby. If he were a civilian, however, he might also be living in the same house in the same suburb for completely different reasons. His residence there is not deemed to be peculiarly incident to his military service. A civilian, however, would probably not be quartered in military housing within the confines of the military installation. There is, courts must have felt, a peculiarly close relationship between the serviceman's military activity and his being housed on-base. Thus it is that it can be said that personal injuries sustained in consequence of damage to on-base housing are within the "incident to service" exception to the scope of the Federal Tort Claims Act defined by Feres

It might fairly be asked how the "off-duty" on-base overnight activities of any serviceman are "incident to service." The answer might be ventured that he is living in an atmosphere of military discipline and is more subject to call than he would be if he were residing away from the post. True it is that such mundane non-military activities as eating, sleeping and playing cards are common to both on-base and off-base residents and to soldiers and civilians alike. It is the military function which is more apt to be with the serviceman on base than off-base. Even while socializing at the Officers' Club or Non-commissioned Officers' Club he is apt to be observing military protocol and drinking by the numbers. Regardless whether we consider the distinction sound it is apparent that the on-base, off-base distinction outlined above, in cases involving injuries to servicemen inflicted in consequence of accidental destruction of their living quarters by means or instrumentalities under government control has

been drawn repeatedly, on the facts of the reported cases. Consistent with these decisions, Sgt. VanLith can not be permitted, on a similar set of facts, to maintain a claim against the government under the Federal Tort Claims Act.

In one particular the facts of the instant case are alleged to differ from those reported cases which seem to us to constitute factual precedents. In the instant case, it is said that Sgt. VanLith was on a three-day pass at the time that he was injured, and that, in consequence, any injury which he suffered during that period (regardless what the situs of the injury was) could not have been incident to his military service. If it were true that the "incident to service" exception created by Feres is restricted in its application to situations clearly involving the necessity for preserving military discipline, such an argument would be more persuasive. During the time he is on a pass a serviceman is arguably not subject to military discipline. As we have noted, however, the results reached by the Supreme Court in the cases companion to Feres are not explained in such terms. Not alone the necessity for maintaining discipline, but also the policy of relegating servicemen to an administrative remedy for redress of injuries functionally related to their military service, appears to account for the results there reached. Sgt. VanLith, on a three-day pass, could have been elsewhere than in his on-base quarters—but he was not. But for the fact that he was in his quarters at Fort Carson because he was assigned to duty at Fort Carson in furtherance of his military career the explosion, when it occurred, would not have injured him. We can not discern any compelling reason for reaching a different result in the instant case than would be reached if Sgt. VanLith, at the same time and place, had been "off-duty" only overnight. The requisite nexus between his military service and the injury he suffered is not lacking here merely because he was on a three-day pass.

For the reasons stated, it is

Ordered that the motion for summary judgment directed to the personal injury claim of Sergeant VanLith should be, and the same is hereby, granted. Counsel is directed to prepare and present a judgment in accordance with this order.