No. 14775

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

GERALDINE PATRICIA METS, mother of
Decedent, Casey Edward Mets, GEORGE
DOUGLAS METS, JR., as guardian and as
brother of Decedent, Casey Edward Mets,
and GEORGE DOUGLAS METS, JR., as
Personal Representative for the Estate
of Casey Edward Mets,

Plaintiffs and Appellants,

-vs-

EDGAR C. GRANRUD,

Defendant and Respondent.

Appeal from:   District Court of the Eleventh Judicial District,
Honorable Robert Sykes, Judge presiding.

Counsel of Record:

For Appellants:

Moore and Doran, Kalispell, Montana
James D. Moore argued, Kalispell, Montana
Warden, Walterskirchen and Christiansen, Kalispell,
Montana

For Respondent:

Hash, Jellison, O'Brien and Bartlett, Kalispell,
Montana
James C. Bartlett argued, Kalispell, Montana

Submitted:  November 6, 1979
Decided:   FEB 26 1980

Filed: FEB 26 1980

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The survivors and personal representative of Casey Mets appeal from the order and judgment of the Flathead County District Court granting summary judgment in favor of Granrud; and Granrud appeals from the subsequent entry of summary judgment in favor of the survivors on his counterclaim.

On December 19, 1976, a Ford jalopy departed from its proper lane of traffic on Whitefish Stage Road, where it had been proceeding in a southerly direction. The vehicle passed over the edge of the road, through a barrowpit and collided with a telephone pole. The accident occurred on the second of two curves located south of the intersection of Granrud Lane and Whitefish Stage Road near Kalispell, Montana. The day had been sunny and clear, and the pavement was dry. There were no skid marks nor any evidence that the driver had applied the brakes.

Little physical evidence existed at the scene of the accident, and the vehicle was practically disintegrated as a result of the impact with the telephone pole. Both Mets and Granrud were thrown from the vehicle, and Mets died without regaining consciousness. Granrud suffered extensive injuries, and has no memory now of any of the events surrounding the accident. Additionally, there were no eyewitnesses to the accident.

On August 10, 1977, the survivors and personal representative of Mets brought suit alleging that Granrud's negligent driving caused the death of their decedent. On October 18, 1977, Granrud filed his answer and counterclaim alleging that Mets

had been driving the vehicle when the collision occurred.
On May 31, 1978, the District Court granted Granrud's motion
for summary judgment, and accordingly judgment was entered
on June 5, 1978.  On June 2, 1978, the survivors moved
for summary judgment on Granrud's counterclaim.  The survivors'
motion was granted, and judgment was entered on June 5,
1978.

On June 8, 1978, the survivors filed a motion to stay
judgment, reconsider and vacate summary judgment.  The
District Court set the judgments aside and granted the sur-
vivors additional time in order to test the pitman arm,
a steering rod.

On January 25, 1979, the District Court granted Granrud's
motion for summary judgment on the ground that there was "no
evidence, circumstantial or direct, establishing any negligence
on the part of the defendant on any theory"; and judgment
was entered on January 30, 1979.  On February 16, 1979, the
survivors moved for summary judgment on Granrud's counterclaim;
and judgment for the survivors was entered on February 16,
1979.  The survivors appealed and Granrud cross-appealed.

The dispositive issue on appeal is whether the
doctrine of res ipsa loquitur is applicable under the facts
of the instant case.

The doctrine of res ipsa loquitur simply stated is:
that when an instrumentality which causes injury, without
any fault of the injured person, is under the exclusive
control of the defendant at the time of the injury, and the
injury is such as in the ordinary course of things does not
occur if the one in control uses proper care, then the law

-3-

infers negligence on the part of the one in control as the cause of the injury. Knowlton v. Sandaker (1968), 150 Mont. 438, 446, 436 P.2d 98, 103; Whitney v. Northwest Greyhound Lines (1952), 125 Mont. 528, 533, 242 P.2d 257, 259. The elements necessary for the application of res ipsa loquitur are: (1) the instrumentality which caused the injury must be within the exclusive control of the defendant; (2) the injury must be one that does not ordinarily occur if the party in control uses proper care; (3) the injury must not be due to any fault on the part of the injured person. Montana Deaconess Hospital v. Gratton (1976), 169 Mont. 185, 190, 545 P.2d 670, 673; Jackson v. William Dingwall Company (1965), 145 Mont. 127, 135-136, 399 P.2d 236, 241; Krohmer v. Dahl (1965), 145 Mont. 491, 498, 402 P.2d 979, 983; Stocking v. Johnson Flying Service (1963), 143 Mont. 61, 68, 387 P.2d 312, 316, Prosser, Law of Torts §39, at 214 (4th ed. 1971).

Because of the absence of evidence tending to establish that the death of Casey Mets was caused by the negligence of Granrud, and the manner in which Granrud drove the vehicle, the survivors rely upon the doctrine of res ipsa loquitur to establish negligence on the part of Granrud. The doctrine of res ipsa loquitur is not an exception to the rule that the burden is on the plaintiff to prove actionable negligence, nor does it permit a recovery on mere proof of the injury. It merely has the force of a disputable presumption of law and supplies the place of proof necessarily wanting when the injured party cannot disclose the cause of his injury, but it is apparent prima facie that the accident would not ordinarily have happened had the defendant exercised ordinary care. Stocking v. Johnson Flying Service, supra, 143 Mont. at 68.

The first element of res ipsa loquitur, that of "defendant's exclusive control at the time of injury", is disputed by the

parties in the instant case. Granrud contends that Mets was driving, and the survivors contend that Granrud was driving the vehicle. The requirement of "exclusive control at the time of injury" does not mean actual physical control at the time of injury. It may be sufficient to show that the defendant exercised control some time prior to the injury. Knowlton v. Sandaker, supra, 150 Mont. at 446. Officer Denning, following an investigation of the accident scene, determined that Granrud was the driver and that Mets was the passenger. Officer Denning's determination was based upon the location of Granrud and Mets in relation to the position of the vehicle. The record also indicates that Granrud was driving the vehicle when he picked up Mets. Granrud was observed driving the vehicle approximately thirty minutes before the accident occurred.

The second element of res ipsa loquitur, that "the injury must be one that does not ordinarily occur if the party in control uses proper care", is lacking in the instant case. The plaintiff is not required to eliminate with certainty all causes or inferences other than the negligence on the part of the driver. As Professor Prosser has stated:

> "All that is needed is evidence from which reasonable men can say that on the whole it is more likely that there was negligence associated with the cause of the event than that there was not." Prosser, Law of Torts, §39, at 218 (4th ed. 1971)

The above cannot reasonably be said in the instant case. Whether the cause of the accident was due to the negligence of the driver remains in doubt. The accident occurred at a point where the road curves, on a sunny and clear day, the pavement was dry, and there was no evidence that the brakes had been applied. Mets died as a result of the accident and Granrud has no memory whatsoever concerning the

-5-

facts and events surrounding the accident. Further, there were no witnesses to the single vehicle accident.

Officer Denning, the Montana Highway Patrolman who responded to and inspected the accident scene, was deposed and gave his opinion that the cause of the accident was that the vehicle's pitman arm broke at a weld point as the vehicle entered the second curve. The record contains the affidavit of an expert, Ralph Godtland, president of Western Iron Works, Inc. Godtland stated, "it is infinitely more likely and probable that this pitman arm fractured under the force of the impact with the utility pole at the point of collision." In this regard, the survivors contend that Officer Denning lacked the requisite training, education, experience and expertise to allow him to give his opinion concerning the pitman arm. The survivors filed a motion in limine to restrict Officer Denning's testimony to matters within the scope of his education, experience, and competence; which was denied by the District Court. Highway patrolmen in Montana have been allowed to reconstruct and give their opinion as to the cause of an accident based upon their investigation. See State v. Deshner (1971), 158 Mont. 188, 489 P.2d 1290. The determination of the qualification of a skilled or expert witness is a matter largely within the discretion of the trial judge, and in the absence of a showing of abuse, ordinarily will not be disturbed. Graham v. Rolandson (1967), 150 Mont. 270, 285, 435 P.2d 263, 271. From our examination of the record in the instant case, we cannot conclude that the District Court abused its discretion in denying the survivor's motion in limine.

In the instant case, it is possible that there was some lapse on the drivers part and that the driver was negligent, and because of that, the vehicle went off the road and collided with the telephone pole. But it is also possible that the cause of the accident was not due to the driver's fault; and that the cause of the accident was the failure of the brakes to operate, a failure in the steering mechanism, or some other reason not due to lack of care on the part of the driver. See Speiser, The Negligence Case: Res Ipsa Loquitur, Vol. 2, §26.7 (1972). In such a situation, the balance of probabilities between, first, causes of an accident involving the vehicle which are due to lack of care on the part of the driver, and second, causes of an accident not due to lack of reasonable care, are so nearly equal that a conclusion that the driver was negligent cannot reasonably be found and would be the result of mere speculation. This conclusion is further supported by the conflicting opinions of Denning and Godtland concerning the pitman arm and the cause of the accident.

Under the facts and circumstances of the instant case, the doctrine of res ipsa loquitur is not applicable because at least one of the three necessary elements to the applicability of the doctrine cannot be shown to exist, namely; the injury must be one that does not ordinarily occur if the party in control uses proper care.

The third element of res ipsa loquitur is that "the injury must not be due to any fault on the part of the injured person." From our review of the record, we cannot determine whether there was any fault on the part of Mets. A conclusion that Mets was or was not at fault, wholly or partially, cannot reasonably be found and would also be the result of mere speculation.

Because of the combination of uncertainties involved in the instant case, we cannot say that the unexplained collision of the vehicle with the telephone pole would not ordinarily occur in the absence of negligence. As we have stated, this is one of the necessary elements for invoking the doctrine of res ipsa loquitur. Therefore, there is no inference of negligence in the instant case, and accordingly there was no genuine issue as to any material fact, and Granrud was entitled to judgment as a matter of law.

The District Court was correct in entering summary judgment in favor of Granrud; and in entering summary judgment in favor of the survivors on the counterclaim.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

Mr. Justice Daniel J. Shea dissenting:

I do not believe Officer Denning was competent to give his opinion as to the cause of the accident. Furthermore, the doctrine of res ipsa loquitur does apply in this case.

The plaintiffs filed a motion in limine seeking an order from the trial court restricting Officer Denning's testimony to matters within his education, experience and competence. The trial court denied this motion and Denning then testified at his deposition that the cause of the accident was that the vehicle's pitman arm broke at a weld point as the vehicle entered the second curve. Although I do not believe that Officer Denning should necessarily have been restricted at his deposition, I do believe that the trial court had no right to rely on his opinion testimony in granting summary judgment to the defendant. Officer Denning was clearly not qualified to render an opinion on the subject.

An expert witness may be qualified by professional, scientific or technical training, or have practical experience in some field or activity conferring upon him a special knowledge. The true test would seem to be whether the subject is sufficiently complex so as to be susceptible to opinion evidence, and whether the witness is properly qualified to give his opinion. McGuire v. Nelson (1975), 167 Mont. 188, 200, 536 P.2d 768. The most critical considerations to be made are the qualifications of a person to give his opinion. Here, on the question involved, the highway patrolman had none at all.

Highway patrolmen may reconstruct and give opinion testimony as to the cause of an accident based upon their investigation. State v. Deshner (1971), 158 Mont. 188, 193, 498 P.2d 1290. There is no doubt here that expert opinion evidence concerning the pitman arm is required, for the knowledge and expertise required

-9-

to form an opinion concerning the pitman arm is beyond that possessed by a layman. But Officer Denning had no qualifications to provide the necessary opinion. The record indicates that he is a high school graduate, had no metallurgical training, and no special knowledge of stress or force. Furthermore, he had no special training in mechanics and possessed no identificable qualifications or knowledge relating to weld strength, metal stress, design or defect. He had no previous experience investigating an accident involving a broken pitman arm or defect in the steering mechanism. His testimony at deposition was devoid of any factual basis in support of his opinion concerning the pitman arm.

The knowledge and experience required in the instant case is beyond that within the normal competence of a highway patrolman. An expert opinion concerning the pitman arm does not relate at all to training or experience in estimating speed, examining skidmarks, and the performance of similar investigative functions. The question related to metallurgical factors and the officer had absolutely no qualifications to give an opinion in this area.

Modern day lawsuits could rarely function without the aid of expert witnesses. Indeed, it seems that the need for the so-called expertise at trial sua sponte gives birth to the presence of an effect of some kind to provide the necessary opinion. But there are limits to the use of expert testimony, and trial courts must recognize those limits. Here, Officer Denning clearly lacked the necessary qualifications to render an opinion in relation to the metallurgical failure of the pitman arm. Discretion of a trial court in permitting expert testimony is no substitute for careful consideration of the underlying qualifications of a witness to advance his opinion on a subject requiring expert opinion.

-10-

The determination by the majority that a conclusion
that the driver/would be mere speculation is but a speculative

                    was negligent

comment itself, for it fails to consider the proper role of
res ipsa loquitur.

I have no quarrel with the three element test set forth
by the majority as necessary for the application of the doctrine
of res ipsa loquitur; Montana Deaconess Hospital v. Gratton
(1976), 169 Mont. 185, 545 P.2d 670, correctly sets it
forth.

The first element of res ipsa loquitur, that of "defendant's
exclusive control at the time of injury", does not require
direct evidence of actual physical control at the time of
injury.  It is sufficient to show that the defendant exercised
control some time prior to the injury, Knowlton v. Sandaker
(1968), 150 Mont. 438, 446, 436 P.2d 98.  The record reveals
that Granrud was driving the vehicle when he picked up Mets;
and Granrud was observed driving the vehicle approximately
thirty minutes before the accident occurred.  Officer Denning,
following an investigation of the accident scene, determined that
Granrud was the driver and Mets was the passenger.  Officer
Denning's determination was based upon the location of Granrud
and Mets in relation to the position of the vehicle.  The first
element of res ipsa loquitur is thus satisfied.

The second element of res ipsa loquitur, that "the injury
must be one that does not ordinarily occur if the party in
control uses proper care", is also satisfied.  The accident
occurred at the point where the road curves, on a sunny and
clear day, the pavement was dry, and there was no evidence
that the brakes had been applied.  Mets died as a result of the
accident and Granrud has no memory whatsoever concerning the
facts and events surrounding the accident.  Additionally, there

-11-

were no witnesses to the single vehicle accident. Officer Denning investigated the accident scene and said that there were no objects in or on the road which would have caused the accident.

It is reasonable to assume that under/ the circumstances automobiles simply/ veer off the road into a borrow pit unless the driver has been negligent. The majority conclusion that it is possible that the accident was not due to the driver's fault, that is, that the cause of the accident may have been due to brake failure, or some other reason, is itself mere speculation. The plaintiffs here were not required to eliminate all possibilities of how the accident may have happened. Plaintiffs were required only to establish a factual basis to infer negligence on the part of the driver. The inference is clear in this case; whether the jury would have accepted this inference is yet another matter.

The conflicting opinions of Officer Denning and Mr. Godtland concerning the pitman arm as the causative agent of the accident, do not cancel the application of the doctrine of res ipsa loquitur. Indeed, if this were the case, a defendant could defeat the application of res ipsa loquitur by hiring himself a pseudo expert (in essence, what happened in this case) to render an opinion as to what caused the accident. Here the majority has classified Officer Denning as an expert witness in relation to metalurgy and pitman arms and by permitting his testimony, has denied plaintiffs an opportunity to take their case to the jury under the doctrine of res ipsa loquitur. This is hardly a fair result, especially when plaintiffs had their own expert, who was properly qualified, to testify that the cause of the accident was not a broken pitman arm or defective steering mechanism.

Assuming the qualifications of Officer Denning to give his opinion in relation to the pitman arm, the majority cannot then

-12-

declare that Mr. Godtland was not at least equally qualified to give his opinion that the accident was not caused by a broken pitman arm or defective steering mechanism. If the jury chose to believe Mr. Godtland rather than Officer Denning, then the jury could proceed to find negligence on the part of the driver based upon the inferences permitted by the doctrine of res ipsa loquitur. But the majority here has usurped the function of the jury.

The third element of res ipsa loquitur, that "the injury must not be due to any fault on the part of the injured person", is also satisfied. There is absolutely no evidence indicating that the deceased, was at fault in any manner. Obviously, there is no direct evidence as to the lack of fault on the part of the deceased; just as there is no direct evidence of fault on the part of the defendant. But this situation calls for the application of res ipsa loquitur. The doctrine permits the case to go to the jury where there is a lack of direct evidence on these matters. If there were direct evidence, the doctrine either would not apply or would have limited applicability.

The Hawaii case of Winter v. Sherman (1976), 57 Hawaii 279, 554 P.2d 1137, is in point. The facts of Winter are similar to the facts of this case. In Winter, a vehicle failed to negotiate a curve, crossed into the opposite lane of traffic, onto the opposite shoulder of the highway, and traveled on the shoulder parallel to the pavement for 225 feet until it collided with a utility pole. After the collision with the pole, the vehicle overturned. There were no defects in or objects on the highway, no mechanical defect in the vehicle was discovered, and no eyewitnesses of the accident. Both the driver and passenger died from injuries received in this single car accident. Under these facts, the Hawaii Supreme Court held that an inference of negligence was created through the application of the doctrine of res ipsa loquitur.

-13-

The only difference between Winter and the instant case is the question of mechanical defects. In Winter, no mechanical defects in the vehicle were discovered. In the instant case Officer Denning determined that the pitman arm broke, which was the cause of the accident. However, as previously discussed, Officer Denning was not qualified as an expert or competent to give such an opinion concerning causation; and therefore this opinion should not have been considered by the District Court. Furthermore, there was contrary opinion evidence provided by the plaintiffs.

The doctrine of res ipsa loquitur is not an exception to the rule that the burden is on the plaintiff to prove actionable negligence, nor does it permit a recovery on mere proof of the injury. It merely has the force of a disputable presumption of law and supplies the place of proof necessarily wanting when the injured party cannot disclose the cause of his injury, but where it is apparent that the accident would not ordinarily have happened had the defendant exercised ordinary care. Stocking v. Johnson Flying Service (1963), 143 Mont. 61, 68, 387 P.2d 312.

The procedural effect of the application of the doctrine of res ipsa loquitur is important. Res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish such circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff. Helmke v. Goff (1979), ___ Mont. ____, 597 P.2d 1131, 36 St.Rep. 1104, 1107-1108.

The trial court should have denied the defendant's motion for summary judgment, and allowed the plaintiff to take his case to the jury through the application of the doctrine of res ipsa loquitur.  Under the facts, reasonable people could reach differing conclusions as to the negligence of the defendant.  See Helmke v. Goff, supra, 36 St.Rep. at 1108. The majority opinion has undermined one of the principle functions of res ipsa loquitur--to let a jury determine the ultimate fact of negligence if there is sufficient circumstantial evidence to create an inference.  But here, the trial court and this Court had become the trier of fact by declaring that other reasonable possibilities exist which are inconsistent with the driver's negligence.  That may well be true; but if so, it should be a jury making that decision.

_____
Justice