JAMES JACKSON, Plaintiff and Appellant, v. WILLIAM
DINGWALL COMPANY, a Corporation, and JACK A.
NELSON, Defendants and Respondents.

No. 10604

Submitted January 11, 1965. Decided February 25, 1965.

Rehearing denied March 9, 1965.

399 P.2d 236.

128

Skedd, Harris & Massman, Helena, H. L. McChesney, Philipsburg, LaVerne v. Harris (argued), Helena, for appellant.

Poore, Poore & McKenzie, Allen R. McKenzie (argued), Butte, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment on a directed verdict in favor of defendants and respondents entered October 17, 1962, in the district court of the third judicial district of the State of Montana, in and for the County of Granite, the Honorable Sid G. Stewart, judge presiding.

The plaintiff was employed as a general ranch hand by the defendant corporation from April 1959, through February 1960. The defendant, Jack A. Nelson, was the ranch foreman.

The plaintiff's duties of employment had included feeding cattle. He was so engaged in this activity when the accident giving rise to the instant litigation occurred.

The plaintiff and a fellow employee, Melvin Rex, had just finished unloading a load of hay which had been loaded on a wagon the night before. The defendant Nelson drove a pickup truck while the plaintiff and Rex stood on top of the load of hay on the wagon pulled by the truck and strung the hay off with pitchforks. For the second load of hay Nelson decided to use a bobsled instead of the wagon. The bobsled was used in the same manner as the wagon had previously been used.

The defendant Nelson loaded the bobsled with a mechanical loader known as a "Farmhand". The plaintiff and Rex stood on the rack of the bobsled and loaded the hay by spreading it around on the rack with pitchforks and walking around on the

hay to pack it down. The rack on the bobsled was a flatbottom rack with boards across the front end and an upright peg or standard in the center of the front of the rack to keep the hay from falling off the front of the rack. There were no sides on the rack and nothing on the back of it. There were four wooden runners with steel bottoms. The bed of the rack was from one and one-half to two feet off the ground.

After the hay was loaded, plaintiff followed his customary practice and stayed on top of the load of hay to ride to the location for unloading. The reason for this custom was because it was easier to just ride on top of the hay load than to get off, ride in a truck to the unloading area, and then climb on the load of hay again, to string the hay in the field. The testimony indicates that the plaintiff exercised his independent choice and voluntarily elected to ride on top of the load. The foreman did not direct him to ride on top of the load, but his custom of riding on top of the load was well known to foreman Nelson. On this occasion Rex did not ride on top of the load of hay since he had to get off the load to clean up loose hay. Since he was off the load of hay he only rode in the truck to the unloading area.

While there was snow on the ground the day of the accident, there were, however, intermittent bare spots due to the wind having blown it off in certain places.

In going from the stack to the feeding area, the same general route which had been used on previous occasions was followed. The bobsled had been used six or seven times before, but this was the first time that it had been used on this particular day. Foreman Nelson drove across a meadow since the road was gravel and had been cleared of snow leaving it bare. Nelson went across the road at right angles, then made a 90 degree turn and took a course parallel to the road. After proceeding a distance of about 150 yards in the meadow, paralleling the road, the outfit approached an irrigation ditch. Due to the fact there was a bridge on the road crossing the irrigation

ditch Nelson drove the outfit from the meadow at a gradual
angle, across the shoulder of the road, as the road approached
the bridge. There was an eight or nine inch rise at the shoulder
of the road where foreman Nelson approached it. In addition
to the rise from the meadow to the road there was an upgrade
on the road in the direction being followed toward the bridge.

It is alleged that the bobsled hit the shoulder of the road at
such an angle and at such a speed that plaintifff was pitched
or slid off the load of hay to the ground, suddenly and without
warning, with two-thirds of the load of hay on top of him.

Just what happened and how it happened is best described
in appellant's testimony at the trial:

"MR. HARRIS: Did he ever, on any other occasion, tell
you to come down off the load? A. No sir.

"Q. Now, when you were using the wagon for hauling hay,
did you use this same pickup truck with it, or what? A.
Sometimes we did, and sometimes we used the tractor.

"Q. And what percent of the time did you use the pickup
and what percent of the time did you use the tractor if you
know? A. Well, I would say that we used the tractor more
than we did the pickup, for that reason that Melvin and I was
doing most of the feeding.

"Q. If you and Melvin were working alone, did you use
the tractor, or what? A. Most of the time the pickup was
gone.

"Q. And if you were using the tractor, where would you
ride? Would you ride up on top of the load or would you ride
in the tractor, or what? A. Most of the time the one that was,
and that would be myself, because Melvin would be running
the farmhand, I would ride up on the load.

"Q. And if Melvin ran the farmhand, would that also mean
that he would be driving the tractor? A. That's right.

"Q. And you would then ride up on top of the load? A. I
would.

"Q. Was there any place for two people to ride on the trac-

tor? A. Oh, you could ride on there by crowding the driver, standing up beside of him."

There is however no evidence to show that the speed was excessive or unreasonable, nor is there any evidence that the area of approach was such that a reasonable man would not choose this area to approach the road.

While crossing the road the first time, at right angles, foreman Nelson had to speed up on account of the drag of the sleigh runners on the bare gravel. At the time of the accident there was nothing to indicate the speed at which the outfit had been proceeding, though it would appear that Nelson changed and increased the speed as he went up on the shoulder of the road. Too, there was testimony that there were a number of places that were flatter which he could have chosen for coming up on to the road in order to avoid the "bad surface". On one previous occasion hay had slid off the wagon, when both plaintiff and fellow employee Rex were riding on top of it, and they both remained on top after it slid. Plaintiff had also seen undetermined amounts of hay slide off the load on occasions when he had been riding in the pickup truck. Prior to the accident in question, plaintiff had never been riding on a load of hay on the bobsled when hay had slipped off. The plaintiff in a deposition made prior to trial admitted he had testified that he recognized that there was danger in riding on the load of hay, although at the trial he testified he could see no danger.

As a result of the accident, plaintiff sustained serious, disabling and permanent injuries, including a fractured pelvis.

By his complaint plaintiff alleged negligence by the defendants, acting through defendent Nelson, in general terms. By their answer defendants denied negligence and set up the affirmative defenses of contributory negligence and assumption of risk. A pre-trial order embodied the allegations of the pleadings, and superseded the pleadings.

Both plaintiff and defendants agreed that the duty owed by

an employer to an employee is that of ordinary or reasonable care, and that the employer-employee relationship precludes any application of the "guest statute."

The specifications of error are to the effect that the court erred in granting a directed verdict and entering a judgment on the same since the verdict and the judgment are contrary to the law and the evidence. A third specification of error is that the court erred in excluding and rejecting evidence that the plaintiff had been paid no workmen's compensation.

The appellant contends that a prima facie case of negligence was set forth in the following particulars:

1. In changing the rate of speed at a place where the surface was uneven.

2. In going too fast in coming up on a rise in elevation.

3. In hitting the shoulder of the road at a gradual angle, which would cause a tipping action, rather than hitting the shoulder more squarely, to avoid tipping action.

4. In failing to choose a flatter route when flatter routes were available.

The appellant secondly contends that he had a right to rely on *res ipsa loquitur*, and that under this rule, a prima facie case was made.

In such a case as this the plaintiff must make out a prima facie case showing that injury complained of is more naturally attributed to negligence alleged than to any other cause which evidence might tend to establish, and no cause should be withdrawn from the jury unless evidence is susceptible of but one construction by reasonable men and that in favor of the defendant, or the evidence is in such condition that if the jury returned a verdict in favor of the plaintiff, it would be the court's duty to set it aside. R.C.M.1947, § 93-4705(5), Castle v. Thisted, 139 Mont. 328, 363 P.2d 724. NOTE: R.C.M.1947, Section 93-4705(5) was repealed by Chapter 13, Laws of 1961; and superseded by Rule 41(b), M.R.Civ.P., and such rule on involuntary dismissal now states: "After the

134

plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.")

In the case at bar the evidence is in such a condition that if the jury returned a verdict in favor of the plaintiff, it would be the court's duty to set the verdict aside; further, upon the facts and the law the plaintiff has shown no right to relief in that no negligent act was proven.

 The burden of proving negligence is upon the party alleging it. Byrnes v. Butte Brewing Co., 44 Mont. 328, 119 P. 788. In every personal injury case, negligence must be proven. Maki v. Murray Hospital, 91 Mont. 251, 7 P.2d 228. The mere happening of an accident is not proof of negligence. Baatz v. Noble, 105 Mont. 59, 69 P.2d 579; State v. Bast, 116 Mont. 329, 151 P.2d 1009; Thompson v. Llewellyn, 136 Mont. 167, 346 P.2d 561. The plaintiff must prove the negligence alleged, and that it was the proximate cause of the injury, and, if the conclusion to be reached from his evidence at the close of his case is equally consonant with some theory inconsistent with either of these issues, it becomes a mere conjecture, and the court should direct a nonsuit. Winnicott v. Orman, 39 Mont. 339, 102 P. 570. If there is no evidence of any negligent act or omission of duty by the defendant to support a verdict for the plaintiff, a motion for nonsuit is properly granted at the close of the plaintiff's case. Allen v. Smeding, 138 Mont. 367, 357 P.2d 13.

 Actionable negligence arises only from a breach of a legal duty. Cassady v. City of Billings, 135 Mont. 390, 340 P.2d 509. The essential elements of actionable negligence are the existence of a duty, a breach thereof, and a resulting injury. McCoy v. Courtney, 25 Wash.2d 956, 172 P.2d 596, 600, 170 A.L.R. 603.

 To sustain a cause of action based on alleged negli-

gence, the plaintiff must prove both negligence and proximate cause. Thompson v. Llewellyn, supra. Negligence carries with it liability for consequences which in the light of attendant circumstances could reasonably have been anticipated by a prudent man, but not for casualties which, though possible, were wholly improbable. Corbett v. Clarke, 187 Va. 222, 46 S.E.2d 327, 328. Negligence is the absence of care according to the circumstances. Bailey v. Alexander Realty Co., 342 Pa. 362, 20 A.2d 754, 757.

The only testimony going to prove negligence is that Nelson decided to change from the use of the wagon to the use of the bobsled; that he knew and allowed the practice of riding on the load of hay, and that Nelson had to speed up to go over the eight or nine inch rise in approaching the road. Also that the bobsled tipped as it went over the rise in the approach to the road. There is no evidence of reckless or unreasonable operation by the defendants. There is no deviation from a duty owed to the plaintiff shown. There is nothing to show that the injury complained of is more naturally attributed to negligence alleged than to any other cause. There is no evidence to show an absence of care according to the circumstances. The speeding up to get the bobsled over the slight rise was never shown to be an act that a reasonable and prudent man would not have done under like circumstances. The location selected to encounter the road was never shown to be such that a reasonable and prudent man would not select that location.

The plaintiff failed to carry the burden of proving a breach of a duty which resulted in the accrued injury. The plaintiff failed to prove that the defendant was negligent.

The appellant's second contention is that a prima facie case is sustained by the doctrine of *res ipsa loquitur*. "The *res ipsa loquitur* doctrine simply stated is this: That when an instrumentality which causes injury, without any fault of the injured person, is under the exclusive control of the defendant

at the time of the injury, and the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care, then the law infers negligence on the part of the one in control as the cause of the injury." Whitney v. Northwest Greyhound Lines, 125 Mont. 528, 533, 242 P.2d 257, 259.

*Res ipsa loquitur* is a presumption that is allowed to remain, when the doctrine is applicable, even if there is no request to have instructions on this point. If the doctrine is clearly applicable, it would be error to *affirmatively* exclude consideration of this presumption. Vespe v. DiMarco, (1964) 43 N.J. 430, 204 A.2d 874. However, in the case at bar, the plaintiff cannot rely on this doctrine to support his prima facie case of negligence since the important elements of exclusive control are not present since the plaintiff loaded the hay on the bobsled, and the element of the plaintiff not being contributorily negligent is in grave doubt since he rode on top of the hay load which he had loaded and knew had possibilities of sliding off. Also, since the plaintiff was very familiar with the total procedure of operations, it is questionable whether the defendant had better access to information regarding the accident.

Assumption of the risk was argued both orally and in counsel's briefs, however, the trial court judge directed the verdict on the grounds that no negligence was shown. Assumption of the risk was not a basis for directing the verdict, therefore, any argument on the scope of this doctrine is irrelevant.

The appellant's third specification of error is that the court erred in excluding and rejecting evidence that the plaintiff had been paid no workmen's compensation. Compensation has no connection to the breach of duty which will prove negligence, therefore, the judge properly ruled that evidence of lack of compensation under workmen's compensation insurance was irrelevant and immaterial to the issue of negligence.

For the foregoing reasons, the verdict of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DOYLE, ADAIR and CASTLES concur.