BILLIE L. KNOWLTON, Administratrix of the Estate of
Charles Dwight Knowlton, Plaintiff and Appellant, v.
MAURICE SANDAKER, FRUEHAUF CORPORATION, a
Corporation, RICE TRUCK LINES, a Corporation, De-
fendants and Respondents.

No. 11174.
Submitted November 28, 1967. Decided January 10, 1968.
436 P.2d 98.

McDonough & Cox, Dale Cox (argued), Glendive, for appellant.

Anderson, Symmes, Forbes, Peete & Brown, Weymouth D. Symmes (argued), Crowley, Kilbourne, Haughey, Hanson & Gallagher, Bruce Toole (argued), Billings, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

Billie L. Knowlton, wife of Charles Dwight Knowlton, deceased, and administratrix of his estate, sued Maurice Sand-

aker, Fruehauf Corporation, and Rice Truck Lines, a corporation, to recover damages for the wrongful death of the deceased. At the close of plaintiff's case, Rice Truck Line's motion for a summary judgment, made pursuant to Rule 56, M.R. Civ.P., was granted.

The motion of respondents Sandaker and Fruehauf Corporation for an involuntary dismissal made pursuant to Rule 41(b), M.R.Civ.P., was also granted. Plaintiff, hereinafter referred to as the appellant, was denied her motion for a new trial made under Rule 59, M.R.Civ.P. Appellant specifies to this court as issues for review the rulings on these motions.

The facts of this case are as follows. Respondent Sandaker was the owner of a Mack truck with a tank mounted on the chassis, and a tank trailer which was used in conjunction with the truck.

Sandaker leased the rig to respondent Rice Truck Lines, which Company then employed Sandaker to drive the rig and carry petroleum products for Rice.

The second provision of the lease agreement between Rice and Sandaker required the lessor to keep the rig in good condition and to bear the costs of repairs necessary to keep the rig in that condition.

A minor leak had developed in the truck tank and also in the trailer tank. Sandaker, in accordance with the lease agreement, decided to have these leaks welded.

In view of the fact that the tanks had hauled combustible petroleum products, it was necessary to have them cleaned before they could safely be welded.

With the intention of having the tanks cleaned, Sandaker on June 8, 1964, drove the rig from his place of business in Glendive, Montana, to Fruehauf Corporation in Billings, Montana. Fruehauf has the facilities to clean tanks.

The process used to clean tanks which have held petroleum products is known as degassing. The usual degassing process consists of flushing the inside of the tank with steam, while

closing all the valves on the tank to allow a water buildup. This vaporizes the petroleum products within the tank. The tank is then ventilated to remove the vapors. Often this is accomplished through the use of a blower, which is basically a fan. The process is completed through the use of a testing device known as an explosimeter or "snifter." This device measures the concentration of combustible petroleum vapors within the tank. If the concentration is too high to allow safe welding, the tank is steamed again.

The record indicates that on the morning of the 8th, the tank truck was steamed, but not ventilated, by Fruehauf. It was then taken to Billings Tank, which used a blower on it and welded it without incident.

During the afternoon of the 8th, the trailer tank was steamed until approximately 4:30 p. m. It was then tested with a snifter, which registered zero or safe for welding. Sandaker picked up the trailer tank around 5:00 o'clock, and drove the rig back to Glendive with the intention of fixing the trailer tank himself.

The importance of the above transaction is that without blowing, the vapors within the trailer tank were allowed to recondense and the tank was unsafe for welding. Appellant argues that Fruehauf should have known, when Sandaker did not pick up the trailer tank until very late in the day, that he could not have it welded that day, and thus should have used its own blower or warned Sandaker about this dangerous condition.

Fruehauf contends that the only directions given it were to steam the tank. Fruehauf's service manager testified that he knew the two tanks were to be welded upon, but assumed that the trailer tank would, as was the truck tank, be taken to Billings Tank for welding. Fruehauf knew Billings Tank had, and regularly used, their own blowing device. Fruehauf contends that even though the trailer tank was picked up late in the day, the welding job to be done on it was slight and could

have been done in the remaining part of the day. It had no reason to assume that Sandaker would not take the tank to Billings Tank. Therefore it was not negligent, they contend, in failing to ventilate the tank or to warn Sandaker of the condition of the tank if it was not ventilated.

Sandaker, upon his return to Glendive, intended to weld the trailer tank himself. His testimony indicates that when he climbed into the tank he observed a greasy residue on the bottom. The residue had a strong oily odor. He decided not to weld himself and instead called B & H Welding Shop in Glendive to see if they could do it.

Deceased Knowlton, an employee of B & H, was assigned the job of welding the tank. He tested the tank with an explosimeter for about ten minutes. Shortly after he had gotten into the tank, the explosion which killed him occurred.

Sandaker testified that he had told the manager of B & H that he was skeptical of the tank and asked whether they had a snifter to test it. The manager testified that Sandaker told him that it would be easy to weld and could be done within five minutes.

The record is clear, though, that neither the manager nor Knowlton placed any reliance on assurances that the tank was clean. The manager warned Knowlton twice not to do the job if he had any doubts. Another welder employed by B & H testified that each welder employed by that firm was responsible for making sure that the tanks were clean. Knowlton himself tested the tank in question for approximately ten minutes before entering it. Sandaker's testimony indicates that Knowlton tested only one of the three compartments into which the trailer tank was divided. Sandaker's testimony, uncorroborated by any other source, further indicated that the dial reading during this testing was in the "danger" range.

Appellant contends that on the basis of the facts presented, she made a prima facie case of negligence on the part of the respondents. This negligence is based upon the failure of the

respondents to adhere to the standard of care required of a supplier of a dangerous chattel, or on the basis of res ipsa loquitur. She further contends that Rice Truck Lines should be held liable because Sandaker was operating as at least its ostensible agent. She also contends that the deceased could not have been found to be guilty of contributory negligence or of having assumed the risk as a matter of law. We cannot agree with these contentions.

The issue that the trial court should not have granted the motion for involuntary dismissal is without merit. Rule 41(b), M.R.Civ.P., provides that: "After the plaintiff has completed the presentation of evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief."

Appellant has correctly pointed out that in reviewing a ruling on a motion for dismissal this court must view the evidence "from the standpoint most favorable to the plaintiff and every fact must be deemed proved which the evidence tends to prove. No case should ever be withheld from the jury when reasonable men might draw different conclusions from the evidence." Teesdale v. Anschutz Drilling Co., 138 Mont. 427, 357 P.2d 4; Mellon v. Kelly, 99 Mont. 10, 20, 41 P.2d 49, 52.

"Nonsuit should never be granted unless it follows as a matter of law that recovery cannot be had upon any view of the evidence, including inferences to be drawn from it." Welch v. Nepstad, 135 Mont. 65, 337 P.2d 14.

We hold that appellant has failed to establish a prima facie case of negligence on the part of the respondents Fruehauf and Sandaker, and it therefore follows that as a matter of law she cannot recover.

To sustain an action for personal injuries based on negligence, the appellant must establish not only that the respondents were negligent in that they breached a legal duty

imposed upon them, but also that this negligence was the proximate cause of the injury suffered. See Jackson v. William Dingwall Co., 145 Mont. 127, 399 P.2d 236. In the present case, the appellant failed to establish either of these two elements, and the involuntary dismissal was proper.

As to the issue of whether the respondents were negligent, appellant suggests two grounds upon which the conduct of the respondents could be found to be negligent. Appellant first contends that Fruehauf and Sandaker breached the legal duty placed upon the suppliers of a dangerous chattel.

■ "One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it." 2 Restatement of Torts 2d, § 392.

■■ As to respondent Fruehauf, there is clearly no negligence under this standard of care. Fruehauf was directed to steam the tank. This it did. Even if it was aware that the tank was to be welded upon, it is clear that it could assume that the welding was to be done by a company which could use its own blowing device. Hence, it was not negligent in failing to make the trailer tank safe for welding by some other party than the one which would use the blowing device. Fruehauf's actions were those of a reasonable individual under the circumstances. Assuming arguendo that a legal obligation on the part of Sandaker existed, we fail to find any breach thereof. The record indicates that those whom he might expect to use the

chattel and be endangered by its use, B & H Welders and their employee Knowlton, were aware of the danger involved.

Appellant's second contention is that under the doctrine of res ipsa loquitur, a presumption was raised that respondents Fruehauf and Sandaker were negligent and this presumption should be sufficient to take the case to the jury.

This court, in the case of Krohmer v. Dahl, 145 Mont. 491, at page 498, 402 P.2d 979, at page 983, thoroughly discussed the doctrine of res ipsa loquitur.

There we stated: "This court has defined res ipsa loquitur in Whitney v. Northwest Greyhound Lines, Inc., 125 Mont. 528, 533, 242 P.2d 257, to be as follows:

" 'The *res ipsa loquitur* doctrine simply stated is this: That when an instrumentality which causes injury, without any fault of the injured person, is under the exclusive control of the defendant at the time of the injury, and the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care, then the law infers negligence on the part of the one in control as the cause of the injury.' * * *

"Our definition of *res ipsa loquitur* in the Whitney case, supra, is not accurate if literally interpreted. It is in need of further explanation and we wish to take this opportunity to clarify it. The requirement of 'exclusive control * * * at the time of the injury' does not mean actual physical control. * * * Thus the requirement of control as applied does not mean actual physical control at the time of injury. It may be sufficient to show that the defendant exercised control some time prior to the injury.

"Prosser has suggested that this requirement be disposed of in *res ipsa cases*. He states:

" '* * * It would be far better, and much confusion would be avoided, if the idea of "control" were discarded altogether, and were to say merely that the apparent cause of the accident must be such that the defendant would be responsible for any

negligence connected with it.' (Prosser, Law of Torts, 3rd.
Ed., p. 225.)

"This does not mean that the possibility of other causes be
eliminated altogether, but only that it be shown that the great-
er probability lies at defendant's door. (Harper & James, The
Law of Torts, § 19.7, p. 1086.)"

The above discussion was quoted extensively because of its
relevancy to the case at hand. The exclusive control spoken of
does not mean actual physical control right up to the time of
the accident. It simply means that the respondents must have
had such control that it would be likely that other negligence
could have occurred which would have operated as an interven-
ing proximate cause of the injury complained of.

The evidence as presented by the appellant clearly
showed that the respondents Fruehauf and Sandaker did not
have such exclusive control as would make it likely that their
negligence, if any, was the cause of the injury complained of.

The deceased was an experienced welder. He was aware of
the danger involved. He had been warned twice not to weld if
there was any danger. In addition, there is some indication
that the tester indicated that it would be dangerous to weld on
the tanks.

Perhaps the tester was defective. Perhaps the deceased was
negligent in testing the tank. In any case the evidence failed
to establish that the respondents had such physical control of
the tank that there was little likelihood that any other negli-
gence might have been present to cause the accident. Unless
this is established, the doctrine of res ipsa loquitur is inapplic-
able.

To have allowed the case to go to the jury on the basis of
the doctrine of res ipsa would have allowed the jury to con-
jecture between two equally plausible explanations of the cause
of the accident. In such a case the appellant has failed to
establish that there was a greater likelihood that respondents'
negligence was the proximate cause of the accident and has

thus failed to satisfy a crucial requirement for the application of the doctrine of res ipsa loquitur. See Jackson v. William Dingwall Co., 145 Mont. 127, 399 P.2d 236.

As appellant failed to establish negligence based either upon the breach of the duty of a supplier of a dangerous chattel or on the basis of res ipsa loquitur, she could not as a matter of law recover. The granting of an involuntary dismissal was proper.

Our conclusion that appellant failed to make a case which could go to the jury is buttressed by the long-established rule in Montana that, " 'The plaintiff has made out a *prima facie* case when his evidence discloses injury to himself and that the negligence of the defendant was the proximate cause of it. [Citing previous cases.] It is the rule, also, that when the circumstances attending the injury, as detailed by the plaintiff's evidence, raise a presumption that he was not, at the time in the exercise of due care, he has failed to make out a case for the jury. The burden is then upon him, and if he fails to introduce other evidence to remove the presumption, he is properly nonsuited.' George v. Northern Pac. Ry. Co., 59 Mont. 162, 171, 196 P. 869." Stevens v. Waldorf-Hoerner Paper Products Co., 149 Mont. 306, 425 P.2d 832.

The trial court found, and the record clearly sustains this conclusion, that the deceased was not exercising due care at the time of the accident.

Appellant, in an attempt to show that the deceased was using due care, relied very heavily on the California case of Sloboden v. Time Oil Company, which was reported in 131 Cal.App.2d 557, 281 P.2d 85, and the second time in 145 Cal. App.2d 197, 302 P.2d 34.

In that case the defendant contracted with plaintiff's employer to have the defendant's trucks, which hauled crude oil, welded by plaintiff's employer. The agreement was that defendant would clean the tanks and supply them ready for welding. Plaintiff tested the tank when it was brought in for

welding, but apparently not thoroughly enough, as an explosion occurred and plaintiff was injured. The court ruled that the plaintiff could not be held to be contributorily negligent as the defendant had contracted to bring the tanks in ready to weld. Plaintiff was acting as a reasonable man when he relied upon these contractual obligations.

The facts of that case distinguish it from the case involved here, and make it inapplicable to our decision. In the case at hand, neither the appellant nor his employer placed any reliance upon assurances that the tank had been cleaned. Deceased undertook to test the tank, and his failure to do so properly could very well have been the cause of the accident. Appellant failed to establish that deceased was using due care, and thus was properly involuntarily dismissed.

Appellant further contends that sufficient evidence of deceased's due care to take the case to the jury was present under the presumption that an individual exercises ordinary care for his own safety. This principle is codified in section 93-1301-7, subd. 4, R.C.M.1947, which reads:

"All other presumptions are satisfactory, if uncontradicted. They are denominated disputable presumptions, and may be controverted by other evidence. The following are of that kind: * * *

"4. That a person takes ordinary care of his own concerns."

In 20 Am.Jur., Evidence, § 158, p. 163, the matter is correctly interpreted as follows: "Where facts appear, presumptions recede. Thus, the necessity for resorting to presumptions disappears where there is direct and positive evidence upon the matter in issue."

The evidence as presented by the appellant was sufficient to rebut the presumption of due care, and further evidence should have been produced in order to get to the jury.

Appellant has cited several cases decided by this court which in effect hold that where the appellant must rely upon ad-

verse witnesses who have an interest in the decision, greater leeway should be allowed in establishing a prima facie case, and more evidence should be required to rebut the presumption of due care. (For cases ruling this way see O'Brien v. Great Northern Ry., 148 Mont. 429, 421 P.2d 710; Reid v. Hennessy Mercantile Co., 45 Mont. 383, 123 P. 397; Walker v. Mink, 117 Mont. 351, 158 P.2d 630; Dahlin v. Rice Truck Lines, 137 Mont. 430, 352 P.2d 801.) This argument ignores the fact that two of the witnesses presented by the appellant, the manager of B & H Welding and another of his employees, testified, and that neither was adverse witnesses nor interested in the outcome of the case.

▮▮▮ Appellant's contention that the lower court erred in granting the motion for summary judgment as to respondent Rice is also without merit. Rule 56(c), M.R.Civ.P., on Summary Judgments states that "The judgment sought shall be rendered forthwith if the pleadings, depositions, *answers to interrogatories,* and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Appellant correctly points out that this court has stated: "Where an appeal is taken from either the granting of a summary judgment, or the failure to grant a motion for summary judgment in negligence cases, this court will review the testimony in the most favorable aspect it will bear in support of plaintiff's claim of the right to present the merits of his case to the factfinder. [Citing authorities.]" Mally v. Asanovich, (Mont. 1967), 423 P.2d 294.

Appellant contends that respondent Sandaker was at least the ostensible agent of respondent Rice. He was such an agent because his truck bore Rice markings, and he stated, in his call to the manager of B & H, that he was with Rice. Appellant contends that under R.C.M.1947, § 2-106, which states, "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another

to be his agent who is not really employed by him.", that such facts establish ostensible agency, and argues that at least the question was one of fact for the jury.

The issue is a meaningless one, and even if error was committed, it was harmless. Appellant failed to establish a case of negligence against the supposed agent, so it would be impossible to impute negligence to the principal, even if it should be decided that an agency relationship existed.

Appellant's third specification of error, that the trial court erred in refusing to grant its motion for a new trial, is also without merit. Appellant's grounds for a new trial were that the trial court had misinterpreted the law and that under the law as it should be interpreted, there was sufficient evidence to take the case to the jury. We find that the trial court correctly interpreted the law involved, and under that law there was insufficient evidence to take the case to the jury.

There being no error in the rulings of the trial court those rulings are affirmed in all respects.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, ADAIR and JOHN C. HARRISON concur.