MR. JUSTICE WEBER
dissenting:
I respectfully disagree with the conclusion of the majority that the failure of the District Court to instruct on res ipsa loquitur was reversible error. I further respectfully disagree with what is essentially a revision of the Montana rule on res ipsa loquitur.
Prior to this case, the rule in Montana has been that, where a defendant presents an “equally plausible explanation” for an accident, which is inconsistent with his own negligence, res ipsa loquitur has no application. Knowlton v. Sandaker (1968), 150 Mont. 438, 436 P.2d 98, and cases there cited.
*186 In the present case the plaintiffs presented extensive evidence aimed at proving negligent conduct on the part of the pilot. Mr. Morrison, a highly qualified and experienced pilot, gave the plaintiff’s “plausible explanation” of the crash. Mr. Morrison testified as to the cause of the crash as follows:
“It’s my opinion — that the, pilot proceeded into weather which was beyond his limitations, lost control of the aircraft, exceeded the limitations of the aircraft, causing structual damages, causing the aircraft to come apart and crash.”
In further explanation of his view of the cause of the crash, Mr. Morrison stated as follows:
“Q. So I take it it’s your opinion that Dean (the pilot), when he — in your opinion when he was attempting to take the plane out of the spiral, he misused the yoke which put the extra stress on the tail section and caused that section to fail first, is that true?
“A. Yes.”
In substance, Mr. Morrison indicated that by pulling back on the yoke, which controls the tail section, the pilot placed extra stress or strain on that section so that it failed and broke off. Unfortunately that conclusion is not consistent with the location of the wreckage. While Mr. Morrison is a highly qualified pilot, he had not examined either the site of the accident or the aircraft wreckage. His explanation of the cause of the accident was more in the nature of a reponse to a hypothetical question basd upon his years of flying experience in Montana.
The defendant’s “plausible explanation” of the crash basically was contained in the testimony of its experts, Roberts and Jensen. These men had investigated more than one hundred aircraft crashes, including several involving Piper PA-28’s like the one involved in the present accident. They had outstanding qualifications as engineers, aircraft designers and investigators of aircraft collisions. These experts had studied the wreckage of this particular aircraft at length, examined the wreckage distribution information, and conducted painstaking tests to determine the nature and pattern of the breakup. When they testified, their conclusions *187 were backed up by detailed explanations. The uncontradicted testimony of these two experts showed that the aircraft disintegrated in the air long prior to impact, and that the order of disintegration of the aircraft was as follows: the left wing flap came loose, starting at the outside edge, and swung around until it tore loose at the inside edge from the wing root structure; and the flap then rotated sharply through the air striking the stabilator which is the horizontal tail surface, cutting off the left side of the stabilator; after which the remainder of the stabilator twisted off in one piece, and thereafter the rudder assembly itself tore off. The next part to come off was the left wing itself and it failed at the wing root. Next the fuselage of the aircraft struck the ground. The wreckage essentially was in a straight line spread out over a distance in excess of 2,000 feet. Witness Jensen testified that in his opinion he could not find any evidence that pilot error could have caused the wing flap to have come off first. He could not see how in flying and manipulating the flight controls, the pilot could have placed the kind of stress upon the plane which would have caused the left flap to fail in this manner. His testimony and that of witness Roberts showed that the flap itself was in the up or retracted position. Mr. Jensen was asked about the Morrison theory that the accident was the result of a spiral dive in which the aircraft gained speed, at which point the pilot pulled back on the yoke overstressing it, and the tail section came off the plane first. Mr. Jensen testified that it could not have happened in that way. He pointed out that in investigating other in-flight breakups on the same type of aircraft, where the breakup had been from overstressing, he found that the stabilator failed symmetrically so that both halves broke off right at the spar. That was not the manner in which this stabilator broke. First the tail tip came off, and then the balance of the stabilator twisted off. Mr. Jensen further emphasized that the wreckage distribution is not consistent with a spiral type of flight. The conclusion is unrebutted that the disintegration of the aircraft in the air in this mannér was both unique and unusual. In particular, such disintegration is as consistent with a failure of the aircraft *188 from inadequate maintenance, or failure of the aircraft from wind shear, as with stress caused by phot error.
The verdict for the defendant, suggests the jury believed the “plausible explanation” of the defendant. Where the evidence shows two plausible explanations, the doctrine in Montana has been that res ipsa loquitur is not applicable. As stated in Knowlton v. Sandaker:
“To have allowed the case to go to the jury on the basis of the doctrine of res ipsa would have allowed the jury to conjecture between two equally plausible explanations of the cause of the accident. In such a case the appellant has filed to establish that there was a greater likelihood that respondents' negligence was the proximate cause of the accident and has thus failed to satisfy a crucial requirement for the application of the doctrine of res ipsa loquitur. ” 150 Mont. at 447-448,436 P.2d at 103.
Without expressly so stating the majority opinion apparently overrules Knowlton v. Sandaker.
With regard to the element of exclusive control by the defendant in a res ipsa case, Knowlton v. Sandaker following the rule in many other Montana cases stated:
“’The res ipsa loquitur doctrine simply stated is this: That when an instrumentality which causes injury, without any fault of the injured person, is under the exclusive control of the defendant at the time of the injury, and the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care, then the law infers negligence on the part of the one in control as the cause of the injury.’” 150 Mont. at 446, 436 P.2d at 103.
This of course suggests that exclusive control on the part of the defendant is necessary. The majority opinion refers to Campbell v. First National Bank (D.N.M.1973), 370 F.Supp. 1096, in which the Federal District Court had held that where a pilot rented an aircraft, the conclusion is inescapable that the requisite control has not been sufficiently demonstrated to permit the doctrine of res ipsa to apply. The majority opinion relied on Stoddard v. Ling-Temco-Vought (C.D.Cal.1981), 513 *189 F.Supp. 314, in order not to apply the Campbell rationale to the facts in this case where the defendant pilot had also rented the aircraft. In doing so, the majority has not followed the express holding of Stoddard v. Ling-Temco- Vought (LTV). In that case, an Air Force jet had crashed, killing several persons, just 38.2 hours after LTV had completed extensive structural modifications and returned the plane to the Air Force. The survivors sued both the Air Force and LTV. The federal court refused to apply a narrow definition of “exclusive control” and stated:
“If it can be shown that there was joint responsibility for the safe operation of this aircraft neither defendant need have exclusive control... The doctrine [R.I.L.] may still be suitable where it is shown that one defendant had control over the instrumentality but later relinquished control to another.” 513 F.Supp. at 321.
The Stoddard court recognized that exclusive control had been “expanded to encompass multiple defendants who are charged by law with joint responsibility for the instrumentality of injury.” (Emphasis added.) 513 F.Supp. at 321-322.
The fact situation in the present case is that Executive Aviation maintained the aircraft and Moore piloted it. Had the plaintiffs sued both Executive Aviation and the phot’s estate, a res ipsa application under Stoddard v. Ling-Temco-Vought would appear to be valid because exclusive control then would have been shown in both defendants. This is the holding of Stoddard. Here Moore’s estate was the sole defendant and exclusive control has not been shown in him.
The result of the majority opinion is the overruling of Knowlton v. Sandaker, supra. Little v. Grizzly Manufacturing (1981), Mont., 636 P.2d 839, 38 St.Rep. 1994, Whitney v. Northwest Greyhound Lines (1952), 125 Mont. 528, 242 P.2d 257, and numerous other Montana cases. As I read various of the Montana cases on res ipsa loquitur I am frankly puzzled as to the status of res ipsa in Montana. Perhaps it would have been simpler had the majority merely stated that all previous cases on res ipsa loquitur were being overruled.
*190 I would affirm the holding of the District Court in denying the use of the res ipsa instruction.
I would suggest that the present instruction on res ipsa loquitur in the Montana Jury Instruction Guide (No. 22.00) be revised so as to be consistent with today’s opinion. The revision should make the instruction broadly permissive in view of today’s relaxation of the standards which determine when an offered res ipsa instruction must be given. Ironically the standards actually applied in the majority opinion are more relaxed than those in the offered instruction as well a those in the permissive federal instruction.