Jacalyn B. CANADA, as Personal Representative of the Estate of Bobby L. Canada, and Jacalyn B. Canada, on behalf of Christopher C. Canada, Lisa M. Canada, Candace C. Canada, and Jacalyn B. Canada, individually Under the Wrongful Death Act, Plaintiff-Appellant,

v.

BLAIN'S HELICOPTERS, INC.; Blain's Helicopter Sales & Service, Inc.; Blain's Mobile Home Court, Inc.; Gebhart Blain; Lee G. Bernier; Don L. Cook; Bell Helicopters, a division of Textron, Inc.; Avco Lycoming, a division of Avco Corporation, Avco Corporation; Gary Corporation; Gary Capps, Defendants-Appellees.

No. 87–3535.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1987.

Decided Nov. 5, 1987.

---

James A. Patten, Billings, Mont., for plaintiff-appellant.

William L. Crowley, Missoula, Mont., for defendants-appellees.

Before GOODWIN, ALARCON and LEAVY, Circuit Judges.

GOODWIN, Circuit Judge:

Canada appeals a summary judgment in favor of the defendant Blain's Helicopter Sales and Service (BHS & S) in this diversity wrongful death case. Because genuine issues of material fact exist which preclude summary judgment, we reverse and remand.

On May 1, 1981, a helicopter owned by defendant BHS & S crashed near Williston, North Dakota. The pilot of the aircraft, Bobby L. Canada, and all seven passengers on board were fatally injured. Bobby Canada was an employee of Blain's Helicopters, Inc. (BHI). The cause of the crash appears to have been engine failure due to the use of improper fuel. BHI was owned by the owners of BHS & S, but was operating as a separate corporation. Its employees were covered by state workers' compensation.

Jacalyn Canada, the wife of Bobby Canada, filed a wrongful death action in federal district court in the District of Montana, on behalf of herself and the children of Bobby Canada, seeking "third-party" damages for the death of her husband.

Gerhart Blain, president of both BHS & S and BHI, testified at a deposition that at the time of the crash, the helicopter was leased from BHS & S to BHI, and that BHI had the exclusive obligation to maintain and repair the helicopter. The lease, however, was never produced, and Blain could not recall the specifics of its terms. The National Transportation and Safety Board (NTSB) report of the accident included a receipt showing that still a third corporate entity, Blain Sales, Inc., had paid for a recent engine overhaul on the helicopter. Further, the report contained fuel invoices which showed "Blain's Helo. Service" as purchasers. Canada, however, did not verify or authenticate these copies.

Gerhart Blain, through either BHI or BHS & S, used a mixture of diesel fuel and unleaded automobile gasoline to fuel his helicopters. Blain received warnings from Exxon and Conoco—the producers of the fuel—that this fuel mixture was improper. The Federal Aviation Administration (FAA) also warned Blain that the mixture failed to meet regulations. Blain testified at his deposition that he consulted Dick Meyer, the man in charge of the day-to-day operations of BHI about the fuel. According to Blain, Meyer assured him that Meyer had tested the fuel and, further, that this fuel was always used in the type of helicopter BHI was flying. Blain said he relied on this advice. He did not know whether Meyer changed the fuel; but Blain did not direct Meyer to do so. Meyer died in the crash.

Blain did not make further efforts to warn other pilots of the letters on file, and he did not instruct Meyer to do so. To the contrary, another BHI pilot, Doug Miller, testified by deposition that Blain had represented to Miller and all the other pilots that there was a letter on file from a major oil company which stated that the blend of fuel being used by BHI met all the required specifications.

Canada filed this wrongful death action on April 22, 1983, and initially named eighteen defendants, including BHS & S and BHI. During the next three and one-half years, most of the defendants were dismissed from the action by court order entered on motion or on stipulation. On February 20, 1985, the district court granted summary judgment in favor of BHI, Gerhart Blain, Lee Bernier, Don Cook and BHMC. These summary judgments were based on the exclusive remedy provisions of Montana's Workers' Compensation Act. Mont.Code Ann. § 39–71–101 to 2909 (1983). Citing Fed.R.Civ.P. 56(f), the court denied the motion for summary judgment in favor of BHS & S because invoices taken from the NTSB report indicated that facts might exist concerning the engine overhaul and the fuel supplier which might be brought out through further discovery and which might indicate that BHS & S was responsible for the improper fueling of the aircraft. BHS & S renewed its motion for summary judgment, and on May 22, 1986, finding that BHS & S had evidence entitling it to a verdict if uncontroverted, the court held that additional discovery by Canada had not produced a material question of fact. Canada had failed to verify the fuel invoices, and the district court could not consider them in ruling on the summary judgment. Without these invoices, Canada had no evidence that BHS & S was responsible for the fueling of the aircraft. The district court also found that Canada had failed to produce evidence that would support her theory that BHS & S was liable as lessor of the aircraft for failure to warn Bobby Canada, a foreseeable user, of a known danger. Canada's motion to reconsider was denied.

Summary judgment is appropriate here only if no reasonable juror, viewing the evidence in the light most favorable to Canada, could find for Canada by a preponderance of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512–13, 91 L.Ed.2d 202 (1986). The party moving for summary judgment must persuade the court through "pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law...." Fed.R.Civ.P. 56(c). Once a motion for summary judgment is made and supported as provided for in Rule 56(c), the burden shifts to the opposing party to show that a genuine issue of material fact remains. *See* Fed.R.Civ.P. 56(e). Rule 56(e) states that "an adverse party may not rest upon the mere allegations or denials of h[er] pleading, but h[er] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Id.*

Canada argues that two genuine issues of disputed material fact require reversal. First, Canada contends that a genuine issue of fact exists concerning BHS & S' duty as lessor of the helicopter to warn Bobby Canada of a known danger. Second, Canada argues that the unverified fuel invoices along with questions about Gerhart Blain's credibility establish a genuine issue of material fact concerning the responsibility for and control over the fueling of the helicopter involved in the crash.

## BHS & S'S LIABILITY AS LESSOR OF THE HELICOPTER

Because jurisdiction in this case is based on diversity of citizenship, we must look to the substantive law of the forum state. Canada bases her claim on sections 407 and 388 through 390 of the Restatement (Second) of Torts (1965), which hold lessors and suppliers of chattels liable for failure to warn foreseeable users of known dangers. Although the Montana Supreme Court has not explicitly adopted these sections of the Restatement, two cases suggest that the court would do so. *See Streich v. Hilton-Davis,* 692 P.2d 440, 449 (Mont.1984) (holding in a products liability case that a manufacturer has a duty to warn foreseeable users of its goods of any hidden dangers posed by its use); *Knowlton v. Sandaker,* 150 Mont. 438, 436 P.2d 98, 102 (1968) (analyzing Restatement § 392 without adopting it, concluding it was of no use to

the plaintiff given the facts of the case). In any event, this court has held that in the absence of a ruling from the Montana Supreme Court, this court will adopt the Restatement (Second) of Torts in cases arising in Montana. *Jackson v. Coast Paint and Lacquer Co.,* 499 F.2d 809, 811 (9th Cir. 1974).

Restatement § 407 provides that "[a] lessor who leases a chattel for the use of others, knowing or having reason to know that it is or is likely to be dangerous for the purpose for which it is to be used, is subject to liability as a supplier of the chattel." Restatement (Second) of Torts § 407 (1965). The liabilities of suppliers are delineated in sections 388 through 390; the comments to those sections apply to § 407 as well. *See* Restatement (Second) of Torts § 407 comment (a). Restatement § 388 provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement (Second) of Torts § 388. The comments make clear that the supplier owes a duty to the entire class of persons whom the supplier should expect to use the product—not simply the person to whom the supplier initially turned over the product. *Id.* comment a. This group of "suppliers" includes lessors. *Id.* comments b and c. These comments indicate that a lessor of a helicopter owes a duty to the pilots of the leasing company.

■ Under the Restatement supplier duties, BHS & S, as lessor, owed a duty to Bobby Canada as a foreseeable user of the helicopter leased to his employer, BHI. BHS & S owed Bobby Canada a duty to warn him of any danger known to BHS & S which pertained to the operation of the helicopter, and to advise him of all information about the character and condition of the helicopter known to BHS & S which BHS & S should have realized would be necessary for Bobby Canada to learn of the danger of using that helicopter. Canada argues persuasively that the evidence before the court, when viewed in the light most favorable to Canada, is sufficient to show that BHS & S breached its duty towards Bobby Canada. We agree.

BHS & S knew through its president, Gerhart Blain, that the fuel was unsafe. Blain admitted in his deposition that he had received letters from the Flight Standards District Office of the FAA and from Conoco (which he received two days before the fatal crash) warning him that the diesel fuel being used in the helicopters was unsafe and did not meet aviation standards. Furthermore, the deposition testimony of Doug Miller indicates that Blain knew the pilots were unaware of the danger because Blain had erroneously represented to the pilots that there was a letter from one of their fuel suppliers on file at Blain Helicopters which stated that their diesel fuel met all the specifications of their jet fuel. A trier could find that Blain affirmatively misled the pilots into thinking that the fuel was safe. *See id.* comment o (representing a chattel as safe knowing it to be unsafe gives rise to liability).

■ Under Montana law, the knowledge of an agent is imputed to the principal. *Empire Steel Mfg. Co. v. Carlson,* 622 P.2d 1016, 1021 (Mont.1981). Thus, Gerhart Blain's knowledge, whether obtained by himself or as a president or agent of BHI, must be imputed to BHS & S.

■ BHS & S cites Restatement § 388 comment 1 and argues that Blain's warning to Dick Meyer, who was in charge of day-to-day operations at BHI, fulfilled BHS & S' duty to use reasonable care to warn Bobby Canada. Comment *l* recognizes that a lessor may fulfill his duty to use reasonable care to inform a user of the chattel of the danger by giving the information to a third person. The comment states that "[i]f he has done so, he is not subject to liability, even though the information never reaches those for whose use the chattel is supplied." Restatement (Second) of Torts § 388 comment *l*. Comment *l*, however, lists several factors indicating that Blain's reliance on Meyer to inform the pilots of the danger was not reasonable. In particular, the gravity of the harm and the ease with which the lessor could inform the user weigh against a finding of reasonableness. *Id.* comment *l* (incorporating the factors listed in comment n). Moreover, Doug Miller's testimony, if believed, would tend to prove that Blain affirmatively misled the pilots into believing the fuel was safe. At best, BHS & S has raised a question of fact concerning the reasonableness of Blain's efforts to warn the pilots. In such a setting summary judgment was not appropriate.

BHS & S also argues, through analogy to bailment law, that BHS & S is not responsible for dangerous conditions arising after delivery of the leased helicopter. Canada asserts that the duty to warn lessees continues after delivery. The Restatement has been found to support Canada's view. *Cover v. Cohen,* 61 N.Y.2d 261, 473 N.Y.S.2d 378, 461 N.E.2d 864 (1984), citing Restatement (Second) of Torts § 388. However, even if we were to adopt BHS & S' view, there remains a genuine issue of fact regarding the delivery date of the helicopter. Thus, we need not decide at this time whether Montana law would recognize a continuing duty of lessors to warn lessees of dangers discovered after delivery.

## THE UNAUTHENTICATED FUEL INVOICES

The district court found that there were no disputed issues of material fact regarding BHS & S' responsibility for fueling the helicopter because the evidence showed that BHS & S had no duties or functions relating to maintenance or fueling of the

aircraft, and that Canada could not properly rely on documents taken from the NTSB report which were not properly authenticated to show the existence of a disputed issue of material fact.

Canada argues that the court erred on two counts. First, Canada argues that because no lease between BHS & S and BHI was produced and Gerhart Blain could not recall its terms, there remained a triable question about which corporation had what obligations concerning the maintenance and fueling of the helicopter. Because evidence (although unverified) demonstrates that the engine overhaul on the helicopter was paid for by a third entity (Blain's Sales, Inc.), and that the fuel was purchased by "Blain's Helo. Service," Canada asserts that Blain's credibility is in issue and that summary judgment is thus inappropriate. Second, Canada argues that the unverified fuel receipts demonstrate that there is a disputed issue of fact as to the entity that ordered the fuel.

■ Canada's assertion concerning the lack of credibility of Gerhart Blain has no bearing on summary judgment. Discredited testimony is not a sufficient basis for drawing an affirmative contrary conclusion. *See Bose v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512, 104 S.Ct. 1949, 1966, 80 L.Ed.2d 502 (1984). Moreover, BHS & S has introduced sufficient affidavit and deposition testimony by other witnesses to support a finding that BHS & S had no responsibility for repair, maintenance and fueling of the aircraft.

In support of her contention that there remain issues of material fact concerning the responsibility for fueling the aircraft, Canada relies solely upon the unauthenticated documents found in the NTSB report. These exhibits raise the same question as Canada's second assertion of error: Whether a court may consider unauthenticated documents to oppose a motion for summary judgment.

■ It is well settled that unauthenticated documents cannot be considered on a motion for summary judgment. In order to be considered by the court, "documents must be authenticated by and attached to

an affidavit that meets the requirements of [Fed.R.Civ.P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2722 at 58–60 (2d ed. 1983) (footnotes omitted). This court has consistently held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment. *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir.1976); *United States v. Dibble*, 429 F.2d 598, 601–02 (9th Cir.1970). We hold that such documents may not be relied upon to defeat a motion for summary judgment.

Canada relies on a statement by the Supreme Court in the recent case of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Celotex*, the court stated that "[w]e do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Id.*, 106 S.Ct. at 2553. Canada argues that this language encompasses unverified documents. The *Celotex* court, however, was referring to the other means enumerated in Rule 56(c) for persuading the court that summary judgment is inappropriate including affidavits, which are evidence produced in a form that would not be admissible at trial. The quoted sentence upon which Canada relies should not be read to allow evidence inadmissible in form if such evidence is not allowed by Rule 56(c).

The district court granted Canada a continuance of one year in which to correct the defect in the evidence. Canada failed to offer additional evidence to support her opposition to summary judgment; nor did she give any reasons why she still could not present the copies of the invoices and fuel repair checks in proper form. Canada did not respond to the renewed motion for summary judgment and has as yet offered no reasons for the inability to authenticate the documents.

■ Although at trial the unverified fuel invoices would be highly probative of BHS & S' responsibility for fueling the helicop-

ter, we cannot say that the district court abused its discretion under Rule 56(f) when it finally refused to grant additional time to verify the fuel invoices, a year after its initial grant of additional time for discovery.

Because we find that Canada has produced evidence which, if believed, is sufficient to allow a reasonable trier of fact to find that BHS & S, as lessor, breached its duty to warn Bobby Canada of a known danger, we reverse the summary judgment for BHS & S, Inc.

Reversed and remanded.